USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1559 ONE NATIONAL BANK, Plaintiff - Appellant, v. JOSEPH M. ANTONELLIS, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr, Circuit Judge, _____________ and Skinner,* Senior District Judge. _____________________ _____________________ Dale R. Harger, with whom Mountain, Dearborn & Whiting and ______________ _____________________________ Howard J. Potash were on brief for appellant. ________________ George A. Berman, with whom Cynthia C. Smith, Susan S. _________________ __________________ _________ Riedel and Posternak, Blankstein & Lund were on brief for ______ _______________________________ appellee. ____________________ April 3, 1996 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Chief Judge. In this legal malpractice TORRUELLA, Chief Judge. ___________ action, appellant-plaintiff One National Bank ("ONB" or "One National") appeals the district court's entry of summary judgment for appellee-defendant Joseph M. Antonellis ("Antonellis"). Two principal issues are raised on appeal: first, whether a nonclient can maintain an action against an attorney when that _________ attorney negligently certifies to a mortgagee that the title is good, and the mortgagee then assigns the title certificate, mortgage, and all associated documents to the nonclient in good faith; and second, whether the mortgagee's assignee can maintain an action for negligent title certification pursuant to the Massachusetts title certification statute, Mass. Gen. L. ch. 93, 70. For the reasons stated herein, we affirm. BACKGROUND BACKGROUND In late 1987, Milford Savings Bank ("Milford") lent $100,000 to Thomas J. Milani and Thomas Chamberlin, individually and as trustees of T & T Realty Trust, and to Jaqueline Wojnowski and Cathy A. Milani, individually. A mortgage on property in Bellingham, Massachusetts served as security (the "first Milani mortgage"). A few months later, in April of 1988, Thomas J. and Cathy A. Milani (together, the "Milanis") executed another mortgage on the same property, also to Milford, to secure a $150,000 loan (the "second Milani mortgage"). Milford was represented in the 1988 transaction by appellee Antonellis, an -2- attorney. Some months later, on August 10, 1988,1 Antonellis issued a certification of title, which certified that the mortgagors held title to the property "free from all encumbrances, and the mortgagee [held] a good and sufficient record first mortgage to the property."2 No mention was made of the first Milani mortgage. The certification also included a disclaimer, which stated: "THIS CERTIFICATE IS NOT TO BE USED FOR TITLE INSURANCE PURPOSES WITHOUT THE EXPRESS WRITTEN PERMISSION OF JOSEPH M. ANTONELLIS, ESQUIRE." While Antonellis was preparing the title certificate, according to his deposition, a Milford bank official called him around the time the second Milani mortgage was executed. The official informed Antonellis of the first Milani mortgage, and stated that it would be subordinated to the April 1988 second Milani mortgage. However, it appears that Milford never subordinated the mortgage. In the meantime, ONB purchased a package of eighty-five adjustable rate one-year first mortgages from Milford on August 2, 1988, including the second Milani mortgage. ONB did not hire an attorney to check these mortgages' certifications of title.  ____________________ 1 The district court noted that Antonellis claimed that it took several months to prepare the formal certificate because he was too busy. 2 Antonellis' certification is made up of two documents: a form entitled "Certification of Title," dated May 3, 1988, and a second form entitled "Attorney's Certification of Title to Mortgagee and Mortgagor[s]," dated August 10, 1988. The former document was attached to the latter and incorporated by reference. -3- Subsequently, Milford was declared insolvent in early July of 1990, and the Milanis defaulted on both their mortgages. The Federal Deposit Insurance Corporation ("FDIC") took over Milford and was appointed its receiver. The FDIC repudiated the agreement between Milford and ONB. Faced with this situation, One National sued Antonellis, the FDIC, and the Milanis. The district court granted summary judgment to defendants Antonellis and FDIC. One National dismissed its action against the Milanis, and here appeals the summary judgment only as to appellee Antonellis.  DISCUSSION DISCUSSION After reciting the standard of review, we address each issue in turn. A. Standard of Review A. Standard of Review __________________ This court reviews a district court's grant of summary judgment de novo. See, e.g., Rhode Island Depositors Economic __ ____ ___ ____ _________________________________ Protection Corp. v. Hayes, 64 F.3d 22, 25 (1st Cir. 1995). "When ________________ _____ presented with a motion for summary judgment, courts should 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994) (quoting ____________ ______ Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st _____ ______________________________ Cir. 1992), cert. denied, 507 U.S. 1030 (1993)). Summary _____ ______ judgment is therefore appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to -4- any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "carries with it the potential to affect the outcome of the suit under the applicable law." Nereida-Gonz lez ________________ v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). We review ______________ the record in the light most favorable to the nonmovant, indulging all reasonable inferences in that party's favor. See, ___ e.g., Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 201 ____ __________________________ ________ (1st Cir. 1995); Rhode Island Depositors Economic Protection ______________________________________________ Corp., 64 F.3d at 25. Here, because the parties do not dispute _____ any facts that could affect the suit's outcome, our analysis confines itself to whether Antonellis is entitled to judgment as a matter of law. B. Applicable Law B. Applicable Law ______________ Both parties share the view that Massachusetts law applies. Accordingly, we will apply that state's law, since "[w]here the parties agree what substantive law controls in a diversity case, we can -- and ordinarily should -- accept such a concession." Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st ______ _________ Cir. 1987); see Sheinkopf v. Stone, 927 F.2d 1259, 1264 (1st Cir. ___ _________ _____ 1991) (accepting the parties' contention that Massachusetts law applied to allegation of implied attorney-client relationship). C. The Negligence Claim C. The Negligence Claim ____________________ One National claims Antonellis is liable to it for his failure to record the first Milani mortgage on the title certificate. See Republic Oil Corp. v. Danziger, 400 N.E.2d ___ ___________________ ________ -5- 1315, 1317 (Mass. App. Ct. 1980) (finding attorney negligent for failure to disclose the existence of a perfected security interest in a certification of title). Because there was no attorney-client relationship between the parties, any duty Antonellis owed ONB must be based on Massachusetts' theory of foreseeable reliance, which states that a lawyer may be liable to a non-client.3 As discussed below, we find that Antonellis did not owe One National a duty of care under the foreseeable reliance exception. Therefore, we will not address the parties' dispute as to whether Antonellis was in fact negligent. See, ___ e.g., Lamare v. Brisbanes, 636 N.E.2d 218, 219-20 (Mass. 1994) ____ ______ _________ (affirming summary judgment in favor of attorney where attorney had no duty to third party nonclient); Logotheti v. Gordon, 607 _________ ______ N.E.2d 1015, 1018 (Mass. 1993) (finding that negligence claim failed where attorney had no duty of care to third party nonclient). 1. The Foreseeable Reliance Exception 1. The Foreseeable Reliance Exception __________________________________ In order to sustain a claim of legal malpractice, ONB must show that Antonellis owed One National a duty of care. See ___ Spinner v. Nutt, 631 N.E.2d 542, 544 (Mass. 1994); DaRoza v. _______ ____ ______ Arter, 622 N.E.2d 604, 608 (Mass. 1993). The issue of whether _____ such a duty exists is a question of law. Id. at 381. The ___  ____________________ 3 The parties do not argue on appeal that there was either an express or implied attorney-client relationship. See Sheinkopf, ___ _________ 927 F.2d at 1265-66; Falherty v. Baybank Merrimack Valley, N.A., ________ ______________________________ 808 F. Supp. 55, 60 (D. Mass. 1992); DeVaux v. American Home Ins. ______ __________________ Co., 444 N.E.2d 355, 357 (Mass. 1983). Accordingly, we focus ___ solely on whether Antonellis' liability extends to ONB under Massachusetts' theory of liabilitybased on foreseeable reliance.  -6- general rule is that "an attorney's liability for negligence arises out of a duty owed to a client." Norman v. Brown, Todd & ______ _____________ Heyburn, 693 F. Supp. 1259, 1265 (D. Mass. 1988). Massachusetts _______ case law has crafted an exception to this general proposition based on foreseeable reliance, however, so that "an attorney is not 'absolutely insulated from liability to nonclients.'" Spinner, 631 N.E.2d at 544 (quoting Page v. Frazier, 445 N.E.2d _______ ____ _______ 148, 154 (Mass. 1983)). As defined in the case law, the foreseeable reliance exception demands that two requirements be met. First, a duty is only owed to nonclients "who the attorney knows will rely on the services rendered." Robertson v. Gaston Snow & Ely Bartlett, 536 _________ __________________________ N.E.2d 334, 350 (Mass.), cert. denied, 493 U.S. 894 (1989); see _____ ______ ___ Spinner, 631 N.E.2d at 544; DaRoza, 622 N.E.2d at 608. It is not _______ ______ enough that a plaintiff claims actual reliance: "[i]t must be shown that the attorney should reasonably foresee that the nonclient will rely upon him for legal services." Id. at 608 ___ n.7. Second, "the court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." Lamare, 636 N.E.2d at 219; see Robertson, 536 N.E.2d at 350; ______ ___ _________ Kirkland Constr. Co. v. James, 658 N.E.2d 699, 701 (Mass. App. _____________________ _____ Ct. 1995). Here, the district court found there was "some question" as to the first, foreseeable reliance prong of the test, but that there was "no question" that there were potentially conflicting duties. (District Court Memorandum and -7- Decision, p. 15). Reviewing the issue de novo, we agree with the __ ____ court below that there was a potential conflict between Antonellis' duty to Milford and his alleged duty to One National, so that ONB cannot meet the test's second requirement. Accordingly, we need not determine whether Antonellis should reasonably have foreseen ONB's reliance on the title certificate. 2. Potential Conflict 2. Potential Conflict __________________ The conflict requirement of the reasonably foreseeable test does not demand that an actual conflict arise. Rather, Massachusetts and federal case law has consistently found that a potential conflict between an attorney's duty to his or her client and the alleged duty to the nonclient is sufficient to defeat the nonclient's malpractice claim. "[I]t is the potential for conflict that prevents the imposition of a duty . . . ." Spinner, 631 N.E.2d at 545; see Schlecht v. Smith, No. 92-30099- _______ ___ ________ _____ MAP, 1994 WL 621594 at * 5 (D. Mass. 1994); Page, 445 N.E.2d at ____ 153; see, e.g., DaRoza, 622 N.E.2d at 608 (employee's interest in ___ ____ ______ worker's compensation suit could have differed from client insurer's). Thus, any potential conflicts between Antonellis' duty to Milford and his alleged duty to ONB will defeat One National's claim. Before addressing the potential conflicts, we note that the facts in the present case differ in several material ways from the Massachusetts cases we have found that address the foreseeable reliance exception. In those cases, only one transaction is generally at issue, the potential third party -8- nonclient's identity is known from the start of the transaction, and often, the nonclient and client are in an adversary position. See, e.g., Page, 445 N.E.2d at 149-50; Kirkland, 658 N.E.2d at ___ ____ ____ ________ 699-700. Here, there were two independent transactions: the certificate of title prepared for the first transaction -- the second Milani mortgage -- was relied on in the second -- the sale of that mortgage. Also, the third party nonclient's identity was not known until after the legal service was rendered, and the nonclient is attempting to stand in the shoes of the client as mortgagor in the first transaction, not in its adverse position as buyer in the second. In short, we find ourselves facing the dilemma of having to apply the fact- dependant Massachusetts foreseeable reliance test to factors that have not yet come before the state courts. One National argues that in this context there was no conflict between Antonellis' duty to Milford and the duty he allegedly owed ONB. It asserts that the duty on which it rests its claim is the same duty Antonellis owed Milford: the duty to search properly and to report accurately the state of the title with respect to the 1988 mortgage. It argues that two duties cannot be in conflict with each other if they are identical. Unlike in Page, ONB argues, where the attorney faced a potential ____ conflict between duties to the mortgagee client and mortgagor nonclient because they may have had different concerns about the state of the title, Page, 445 N.E.2d at 153, both ONB and Milford ____ simply wanted an accurate certificate of title. That is true, as -9- far as it goes. However, One National misconstrues the scope of the duty to the client that Massachusetts courts have focused on. "[A]n isolated instance identity of interests" between ONB and Milford does not suffice to impose duty on Antonellis. Spinner, _______ 631 N.E.2d at 545. "Although the particular activity in question may not be adverse, and may actually be beneficial, the appropriate inquiry concerns the purpose of the entire legal representation." 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice 7.11, at 387 (3d ed. 1989). Antonellis owed Milford not only an obligation to report on the title, but also a concurrent duty of confidentiality. The Massachusetts and federal courts that have applied the foreseeable reliance exception have repeatedly drawn on the importance of the duty of confidentiality in finding the potential for a conflict, so that "an attorney's duty to third parties is circumscribed and limited by the law and the disciplinary rules governing attorney conduct." Schlecht, 1994 WL 621594 at * 5; see, e.g., Austin v. ________ ___ ____ ______ Bradley, Barry & Tarlow, P.C., 836 F. Supp. 36, 38 (D. Mass. _______________________________ 1993); Logotheti, 607 N.E.2d at 1018; Spinner, 631 N.E.2d at 545; _________ _______ see also Mallen & Smith, supra, at 7.11 at 388 ("The policy ________ _____ considerations against implying a duty are strongest where doing so would detract from the attorney's ethical obligations to the client."). In Logotheti and Spinner the Supreme Judicial Court _________ _______ framed the attorney's duty of confidentiality in terms of the -10- Massachusetts disciplinary rules' requirement "that an attorney preserve the secrets and confidences gained in the course of representing a client." Spinner, 631 N.E.2d at 545; see S.J.C. _______ ___ Rule 3:07, Canon 4, DR 4-101 ("Preservation of Confidences and Secrets of a Client"); S.J.C. Rule 3:07, Canon 7, DR 7-101 ("Representing a Client Zealously"); see also Schlecht, 1994 WL ________ ________ 621594 at * 5 ("To impose on a borrower/mortgagor's attorney a duty to the lender/mortgagee can create situations antithetical to the disciplinary rules which govern attorney conduct."); Logotheti, 607 N.E.2d at 1018; Harris v. Magri, 656 N.E.2d 585, _________ ______ _____ 586 n.4 (Mass. App. Ct. 1995). Other cases posit the obligation of confidentiality in more general terms. See Austin, 836 F. ___ ______ Supp. at 38 (citing to attorney's "concurrent obligation of confidentiality" to his client). Here, contrary to ONB's claim, there is a clear potential conflict rooted in Antonellis' duty of confidentiality. Milford knew that there was a first mortgage that had not been reported. Given this, if we place a duty to ONB on Antonellis' shoulders, we put on him the obligation to inform it of his error. That mistake was made in the first transaction, a transaction to which One National was not a party. Antonellis' purported duty to ONB therefore arose only in the second transaction, where that bank actually was a party. Cf. ___ Hendrickson v. Sears, 310 N.E.2d 131, 135-36 (Mass. 1974) ___________ _____ (holding that cause of action for negligent certification of title accrues upon discovery). Ostensibly, having already -11- produced the certificate, his duty would be to check whether Milford subordinated the debt, remind it of his error, and if Milford did not rectify it, to do so himself by informing ONB. Clearly, at that point a conflict in the duty of confidentiality would arise: if his client decided not to pass on the information and Antonellis did so in its stead, he would breach his duty of confidentiality. See S.J.C. Rule 3:07, Canon 4, DR ___ 4-101(B) (stating that "a lawyer shall not knowingly . . . [r]eveal a confidence or secret of his client."). If he did not pass on the information, he would breach his duty to ONB. We refuse to place him in that position. Therefore, we find that the potential for conflicts in Antonellis' duty to Milford and to ONB bars liability in this case.4 Cf. Austin, 836 F. Supp. at ___ ______  ____________________ 4 The court below relied on a different basis in finding that there was a clear potential for conflict in this case. It found that ONB and Milford were in the adverse positions of buyer and seller in August 1988. Since the courts have found that reliance on an adverse party's legal counsel in a business transaction is unreasonable as a matter of law, see Schlecht, 1994 WL 621594 at ___ ________ * 7; Robertson, 536 N.E.2d at 350 n.6; Page, 445 N.E.2d at 154- _________ ____ 55, the court found that there was a potential for conflict. It found that Antonellis would be under different pressures if he were representing both Milford and ONB than if he represented ONB alone. The court also commented on One National's failure to use its own counsel in the sales transaction. One National contests that Antonellis was not representing a party adverse to it, because he did not represent Milford in the ONB-Milford sales transaction, but only in the second Milani mortgage. When he rendered the title certificate at issue, Milford and ONB were not yet adverse parties. Because we find that One National fails the potential conflicts prong of the foreseeable reliance exception on other grounds, we do not address here whether the district court was correct in finding that ONB sought to rely on the legal counsel of an adverse party. -12- 38 (refusing to infer a duty to disclose a client's insolvency to nonclient investors where duty would directly conflict with concurrent obligation of confidentiality to client). ONB contests that potential conflicts would only arise if Antonellis had represented Milford as the seller of the mortgages in the second transaction, and if Milford and Antonellis had intended to deceive ONB. We disagree. Neither of these additional facts are necessary for potential conflicts to arise. First, ONB is relying on the work Antonellis did for the first transaction -- whether we consider ONB as Milford's replacement in the first transaction or as a party adverse to Milford in the second is irrelevant to this analysis. Second, as the district court noted, there is no allegation that Milford and Antonellis colluded to deceive ONB. There are many reasons why Milford could fail to inform ONB of the faulty title. Indeed, even if it did tell ONB about the problem, Antonellis could still face a conflict in his duty of confidentiality if Milford made any misrepresentations about the circumstances under which the error was made, i.e. that it too knew of the omission of the ____ first Milani mortgage. Thus we do not accept ONB's contention that there was no potential conflict. 3. Kirkland Construction Co. v. James 3. Kirkland Construction Co. v. James _________________________ _____ One National points to Kirkland Construction Co. v. __________________________ James, 658 N.E.2d 699 (Mass. App. Ct. 1995), the Appeals Court of _____ Massachusetts' most recent decision addressing the foreseeable reliance exception to the no duty rule, as support for its -13- position. There, the court faced a challenge to a lower court's grant of a 12(b)(6) motion under the Massachusetts Rules of Civil Procedure. Kirkland, a contractor, was asked to renovate a retail space for an office supply firm. He sought and received a letter from the firm's attorney, defendant James, assuring that his client could pay for the work. However, after Kirkland had performed under the contract, the office supply firm failed to pay. Kirkland sued James and the partners of his law firm for negligence, and the lower court granted the defendants' 12(b)(6) motion. Id. at 699-700. The court reversed, finding that ___ Kirkland was entitled to seek relief from the attorneys under a theory of foreseeable reliance. Id. at 701. ___ An examination of the factors the court weighed in Kirkland in comparison with the facts of the instant case reveals ________ that the circumstances here are sufficiently different from those in Kirkland that we should affirm the court below. In its ________ analysis, the Kirkland Court focused on who was intended to ________ benefit from the letter: "an independent duty will be more readily found where, as here, the service is intended to benefit the client as well as the third party." Id. (citing the ___ Restatement (Second) of Torts 552(2)(a) (1977)). Examining the letter, which was addressed to Kirkland, the court noted that it contained unqualified representations and that the typical hedging phrases were absent. Id. at 702; cf. Jurgens v. Abraham, ___ ___ _______ _______ 616 F. Supp. 1381, 1386 (D. Mass. 1985) (holding that nonclient stated a claim where attorney told him he attached a sum of money -14- for nonclient's benefit). That is not true here: the certificate of title was not addressed to ONB, the representations were made in boilerplate language with standard exceptions listed, and there was an express disclaimer, in capital letters, on one of the two pages. The Kirkland court also listed a series of allegations ________ in the plaintiff's complaint that, if proven, would be "the stuff of liability." 658 N.E.2d at 701. First, both Kirkland and ONB allege that the representations were false. The fact that both plaintiffs make the same allegation, however, is somewhat of a red herring, because if there were no false representations, there would be no basis for suit. Second, Kirkland alleged that the letter stated that the office supply firm had made arrangements to ensure payment, and that the attorneys' "objective was to induce Kirkland to enter into a contract." Id. ___ We cannot say that Antonellis' objective was to induce ONB into a contract, since ONB was not a party to the transaction for which the certificate of title was performed.5 Third, the Kirkland ________ complaint maintained that the attorneys "knew and intended that Kirkland would rely on the representations," and that the reliance was reasonable. Id. Again, ONB was not a party. Even ___ if we infer that Antonellis should have suspected that the  ____________________ 5 Nor can ONB argue that the purpose of Antonellis' work was to induce the Milanis into the mortgage, because by law it is unreasonable for a mortgagee to rely on mortgagor's counsel, as mortgagee and mortgagor are adverse parties. See Schlecht, 1994 ___ ________ WL 621594 at * 5; Lamare, 636 N.E.2d at 218; Beecy v. ______ _____ Pucciarelli, 441 N.E.2d 1035, 1040 (Mass. 1982). ___________ -15- mortgage would be sold, however, the ties between the attorney and nonclient here are nowhere near as close as those in Kirkland, where the letter at issue was addressed to the ________ plaintiff nonclient and expressly addressed its concerns. Finally, Kirkland alleged that it was seeking information, not legal advice, from the lawyers about their client. Id. Whether ___ Antonellis' certificate of title is a legal opinion proves irrelevant, however, since the Kirkland court also stated that ________ "the likelihood of liability would not be greater" if the letter were an opinion letter. Id. at 702 n.7. ___ In the light of the potential conflict between Antonellis' duty to his client and his alleged duty to One National, and the differences between the factors that led to the court's reversal in Kirkland and the facts of the instant case, ________ we find upon de novo review that as a matter of law One __ ____ National's legal malpractice claim fails the foreseeable reliance test. As a consequence, we need not determine whether ONB can meet the foreseeability requirement. See DaRoza, 622 N.E.2d at ___ ______ 609. D. Assignability of Certificate of Title D. Assignability of Certificate of Title _____________________________________ One National contends that it acquired the right to proceed against Antonellis through assignment of the certificate.6 Specifically, it states that because Milford  ____________________ 6 In fact, it proves difficult to determine the intended scope of ONB's assignment argument. Before the court below, it contended that as assignee of the mortgage it "had all the rights of Milford Savings Bank once the mortgage was assigned and duly recorded . . . which would include all rights against the -16- entered into a contract with Antonellis for the issuance of the title certificate and then assigned the fruits of the contract to ONB, ONB has the right to proceed against Antonellis. The crux of the issue, it claims, is whether the certificate was transferrable by Milford to ONB. Essentially, ONB asks that we allow it to step into Milford's shoes as a client merely because it was assigned the certificate that was the product of the attorney-client relationship. Noting that the disclaimer barred reliance by a title insurer, not assignment, it argues that although the transferability of a certificate of title has apparently not been addressed by the Massachusetts courts, they would hold the assignment valid. ONB makes its argument by analogy to the law's general favor towards assignability of contracts and contract rights, and the fact that Massachusetts allows assignments of many types of claims, including contract damages. See Mass. Gen. L. ch. 106 2-210(2). It also makes an ___ analogy to other jurisdictions' acceptance of assignments of  ____________________ certifying attorney Antonellis." (Appdx. at 50). It did not specify which rights it referred to. In its brief to this court, ONB argued that the "gist" of the tort of legal malpractice is the lawyer's breach of contract, and that ONB acquired a legal malpractice claim with the certificate, stating that "if Milford's assignment to ONB is treated as an assignment of a malpractice claim, the Supreme Judicial Court would hold the assignment valid." (Brief of Appellant at 27). Of course, since ONB did not raise below a claim that a legal malpractice claim was assigned, they cannot do so here. See Ondine Shipping Corp. ___ ______________________ v. United States, 24 F.3d 353, 355 (1st Cir. 1994); Clauson v. ______________ _______ Smith, 823 F.2d 660, 666 (1st Cir. 1987) (collecting cases). _____ However, in its reply brief ONB states that it was not arguing that the action involved an assignment of a malpractice claim, but rather the "real issue" was whether the certificate was transferable. Since we deem that this "real issue" was included within the scope of its argument below, we address their claim. -17- legal malpractice claims. See, e.g., Oppel v. Empire Mutual Ins. ___ ____ _____ __________________ Co., 517 F. Supp. 1305, 1306-07 (S.D.N.Y. 1981); Thurston v. ___ ________ Continential Casualty Co., 567 A.2d 922, 923 (Me. 1989). _________________________ One National recognizes that others might object to selling the product of legal services as inconsistent with the personal and fiduciary character of the attorney-client relationship. See Dunne v. Cunningham, 125 N.E. 560, 561 (Mass. ___ _____ __________ 1920) (commenting on the "highly fiduciary" relationship between attorney and client). Without citing any direct authority in its support, ONB contends that the assignment illustrates the "inherently weak nature" of the relationship where the attorney merely plays a standardized role of reporting the state of the public records. See Fall River Savings Bank v. Callahan, 463 ___ ________________________ ________ N.E.2d 555, 561 (Mass. App. Ct. 1984) (noting the standardized nature of passing on a title); 1 Mallen & Smith, supra, at 25.8 _____ (setting out the process and describing potential liabilities). Thus, since the purpose of the relationship is not to give advice or counselling but to produce a formal certificate, ONB maintains, the transfer would not jeopardize any public policy favoring the attorney-client relationship. The district court addressed ONB's assignment contention within the context of its discussion of Mass. Gen. L. ch. 93, 70. It rejected One National's position that an assignee should have the same fiduciary relationship with the assignor's attorney as the assignor, the original mortgagee, enjoyed, on two bases. We address the first, which draws on the -18- language of section 70, in our discussion of that section, infra. _____ The district court's second basis for rejecting ONB's position was that ONB's argument does not arise out of the common law governing the unique attorney-client relationship -- a personal relationship, voluntarily assumed, which is governed by disciplinary rules. Under de novo review, we also find that the __ ____ attorney-client relationship between Antonellis and Milford plays a crucial role in determining whether the certificate was transferable. Massachusetts case law offers little specific guidance on this issue, but we find that an analysis of their treatment of the attorney-client relationship in the context of claims for negligent certification of title proves illustrative. First, as was noted above, the nature of the attorney-client relationship, including the obligation of confidentiality and application of the disciplinary rules, has consistently been cited by the Massachusetts courts within this context. See, e.g., Spinner, ___ ____ _______ 631 N.E.2d at 545. This indicates that the courts do not see the attorney-client relationship in this context as inherently weak, as ONB suggests. Significantly, in Hendrickson v. Sears, which ___________ _____ involved a suit by the purchasers of real estate against the attorney they hired for the title search, the Court noted the differences between legal and medical malpractice actions in its analysis, 310 N.E.2d at 134, and commented that [t]he client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the -19- professional or to retain a second professional to do so. The relation of attorney and client is highly fiduciary in its nature. Id. at 135. Nowhere does the Court's language suggest that the ___ fiduciary relationship of an attorney and client is diminished because the services the attorney rendered were highly standardized. Similarly, in Schlecht v. Smith, the district ________ _____ court addressed the attorney's failure to record the mortgage, at his client's request, within the context of the disciplinary rules. Schlecht, 1994 WL 621594 at * 5. Again, nothing suggests ________ that the rules' force is somehow diminished. Second, in Fall River Savings Bank v. Callahan, the _________________________ ________ Appeals Court of Massachusetts noted the standardized nature of title searches. 463 N.E.2d at 561 ("There may be no definite rules which prescribe a right or wrong way to conduct a deposition but certain rules have evolved for passing on a title."). The court found that fact significant in deciding that a court may use commentaries to establish the standard of care in the land conveyance context, since that is an area of law practice "which lends itself particularly to formulation through decisional law and commentary as to what are appropriate procedures." Id. But even as it recognized the standardization ___ of this area, the Court treated the attorney-client relationship as it would in any other context, as carrying with it all the attendant duties and responsibilities. Id. ___ This approach makes intuitive sense. Even though the practices for searching title are standardized, the disciplinary -20- rules apply as they would in any attorney-client relationship, and the attorney is subject to liability for malpractice. The duties attendant to the fiduciary relationship between the attorney and client are in full force. See Dunne, 125 N.E. at ___ _____ 561 (noting that the principles relating to an attorney's fiduciary duties "are recognized as binding in all their amplitude."). Thus the unspecified public policy concerns that ONB tells us would not be jeopardized -- presumably, protecting the attorney's ability to function effectively, client confidentiality, the integrity of the bench and bar, and the ethical administration of justice, see Berman v. Coakley, 137 ___ ______ _______ N.E. 667, 670-71 (Mass. 1923) ("Public policy hardly can touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client."); 1 Mallen & Smith, supra, at 11.5, 11.12, 12.4, 13.2 _____ -- are still implicated. In sum, since the case law clearly indicates that the Massachusetts courts do not consider the fiduciary nature of the attorney-client relationship to be attenuated in this certificate of title context, and in the absence of further guidance from the Massachusetts courts, we refuse to allow a third party, of whom the attorney does not know, to assume the rights of a client through assignment. We therefore find that One National did not acquire the right to proceed against Antonellis through assignment of the certificate of title. E. General Law Chapter 93, Section 70 E. General Law Chapter 93, Section 70 __________________________________ -21- One National's final argument is that Antonellis is liable under Mass. Gen. L. ch. 93, 70. Under that section, an attorney rendering a certificate of title for a mortgagee may be subject to liability to the mortgagor as well: The liability of any attorney rendering such certification shall be limited to the amount of the consideration shown on the deed with respect to the mortgagor, and shall be limited to the original principal amount secured by the mortgage with respect to the mortgagee. Said certification shall be effective for the benefit of the mortgagor so long as said mortgagor has title to the mortgaged premises, and shall be effective for the benefit of the mortgagee so long as the original debt secured by the mortgage remains unpaid. Mass. Gen. L. ch. 93, 70. The loan or credit secured by the purchase money first mortgage must be on real estate with between one and four dwellings, to be occupied by the mortgagor. Id. ___ ONB argues that because it holds the mortgage it falls within the scope of "mortgagee" as used in section 70, and that Antonellis is thus liable to it. Noting that section 70 operates in a manner analogous to a statute of limitations in that it provides that the title certification will remain in effect so long as the original debt is unpaid, ONB argues it would be unreasonable to argue that the attorney's liability disappears when a mortgage is sold, no matter whether or not the original debt is unpaid. Further, ONB notes that the sale of a mortgage neither enlarges the attorney's liability, as it is limited by the statute, nor changes the nature of the liability. As ONB states, one bank is simply substituted for another: all else -22- remains constant. Thus the attorney remains liable on the certificate until the mortgage debt is paid. Upon de novo review, we agree with the district court __ ____ that, while One National's argument makes intuitive sense, it eventually fails. First, like the court below, we find that the plain language of the statute does not support ONB's position. It is a basic tenet of statutory interpretation that where the plain language of a statute is clear, it governs. See United ___ ______ States v. Rutherford, 442 U.S. 544, 551 (1979) ("If a legislative ______ __________ purpose is expressed in 'plain and unambiguous language, . . . the . . . duty of the courts is to give it effect according to its terms'" (quoting United States v. Lexington Mill & Elevator _____________ _________________________ Co., 232 U.S. 399, 409 (1914)). ONB correctly points out that ___ here, the statute's text does not state that the attorney's liability to the mortgagee terminates when the mortgage is transferred. However, we refuse to read the opposite inference - - that the liability is not extinguished upon transferral -- into the statute when it is not warranted by the plain language of the text. The language of section 70 focuses on mortgagees, not, as One National would have us believe, on their assignees. See ___ Falmouth Ob/Gyn Assoc. Inc. v. Abisla, 629 N.E.2d 291, 293 (Mass. ___________________________ ______ 1994), ("A term employed in a statute should be afforded its customary meaning, taking into account the legislation's purpose and history."); Page, 445 N.E.2d at 152 (refusing to extend ____ 70's application to mortgagors purchasing unimproved land in the absence of suggestions or implications in the clear language -23- of the statute). "Exceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the enactment as a whole." Rutherford, 442 U.S. at 552. Clearly, no __________ such exception arises here. Constraining the application of section 70 to mortgagees' assignees does not create "absurd results." As the court below noted, Chapter 93 as a whole addresses "the regulation of trade and enterprises in order to prevent unfair practices against consumers." (District Court Memorandum and Decision, p. 8). Our reading of the statute is not "obviously at variance" with that policy, even if this reading does not extend the policy to assignees of mortgagees. Second, like the court in Page, we note that the ____ legislature, in its amendments to section 70, has not expanded the class of mortgagors it protects to encompass assignees. See ___ Page, 445 N.E.2d at 152. As the district court stated, had the ____ legislature desired to extend the provisions of section 70, it could have done so. Instead, only purchase money first mortgages, of dwellings of up to four families, occupied by the mortgagor, fall within the section. Clearly, the legislature did not intend for section 70 to provide that a commercial bank, which neither paid for the attorney's services nor had any contact with the attorney, be entitled to the protection of the section merely because it was assigned the mortgage. In the face of the plain language of the statute, and in the absence of -24- legislative action to the contrary, we reject One National's argument that Antonellis is liable to it under section 70. CONCLUSION CONCLUSION In this case, as in all cases involving an allegation that an attorney failed in a duty to a nonclient, there is a tension between two concerns. On one hand, we do not want to extend liability so widely that an attorney faces "'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" Craig v. Everett M. Brooks Co., 222 _____ _______________________ N.E.2d 752, 755 (Mass. 1967) (quoting Ultramares Corp. v. Touche, ________________ _______ Niven & Co., 174 N.E. 441, 444 (1931)). On the other hand, we do ___________ not want to reward an attorney's carelessness. See Spinner, 631 ___ _______ N.E.2d at 545 (noting policy considerations against sheltering attorney's negligence from suit in will-drafting context). In finding that Antonellis' liability does not extend to One National, we are cognizant that on the surface we seem to be protecting him from suit for his negligence. However, we note that ordinarily, ONB would have recourse against Milford for the faulty title, and Milford in turn could bring a negligence claim against Antonellis, as its lawyer. See id. (noting that trust ___ ___ beneficiaries could sue the trustees, and the trustees in turn could bring an action against their attorneys, but beneficiaries could not directly sue trustees' attorneys). Because Milford failed, ONB has lost that option. ONB, essentially, took a risk in deciding not to get its own title insurance for the transaction. It was a calculated risk, and it required a -25- complicated chain of events -- Antonellis' negligence, the Milanis' default, Milford's failure, and the FDIC's repudiation of the claim -- to make that risk fail to pay off. We refuse to spot ONB's choice to take that risk with the safety net of a negligence claim against Antonellis. Cf. Page, 445 N.E.2d at ___ ____ 154-55 ("Where, as here, a nonclient takes the chance that the client's interests are in harmony with his own, and does so in the face of an express warning that the interests may differ, his claim of foreseeable reliance cannot be rescued simply because, in retrospect, the interests are shown not to have differed."). For the foregoing reasons, the order of the district court granting summary judgment in favor of Antonellis is affirmed. affirmed. ________ -26-