<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-1648

                      MANUEL A. IGLESIAS,

                     Plaintiff, Appellant,

                               v.

           MUTUAL LIFE INSURANCE COMPANY OF NEW YORK,

                     Defendant, Appellee.
                                
                     ____________________

No. 97-1649
                                
                                
                     MANUEL A. IGLESIAS,
                                
                     Plaintiff, Appellee,
                                
                              v.
                                
          MUTUAL LIFE INSURANCE COMPANY OF NEW YORK,
                                
                    Defendant, Appellant.
                                

        APPEALS FROM THE UNITED STATES DISTRICT COURT
                                
               FOR THE DISTRICT OF PUERTO RICO
                                
     [Hon. Raymond L. Acosta, Senior U.S. District Judge]
                                

                            Before
                                
                    Torruella, Chief Judge,
                                
               Campbell, Senior Circuit Judge,
                                
                  and Stahl, Circuit Judge.

    Charles S. Hey-Maestre, with whom Adalina deJesus-Morales was
on brief for Manuel A. Iglesias.
    Roberto O. Maldonado-Nieves, was on brief for Mutual Life
Insurance Company of New York.

 

September 17, 1998

                                
                                

 CAMPBELL, Senior Circuit Judge.  Manuel A. Iglesias
appeals from the district court's grant of summary judgment on his
discrimination and contract claims against his former employer,
Mutual Life Insurance Company of New York ("MONY").  MONY appeals
from the court's dismissal of its counterclaim for restitution of
money that Iglesias obtained by submitting admittedly overstated
expense reports.  We affirm the judgment for MONY against Iglesias.
We vacate the order dismissing MONY's counterclaim and remand the
counterclaim with directions to dismiss the counterclaim without
prejudice for want of jurisdiction.
I.  Iglesias's Claims.
 We review a grant of summary judgment de novo, taking the
facts in the light most favorable to the non-moving party.  See One
Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996).  After
considering the record, briefs, and oral arguments, we affirm the
dismissal of Iglesias's discrimination and contract claims
substantially for the reasons stated in the district court's
memoranda and orders.  We add only the following short discussion.
 Regarding Iglesias's discrimination claims, Iglesias
received clear and unequivocal notice that he was terminated as
MONY's San Jose Agency Manager on February 9, 1989, at the latest.  
On that date, MONY sent him a letter informing him that he would no
longer be authorized to act as Agency Manager.  In the context of
the parties' prior discussions regarding Iglesias's retirement, the
February 1989 letter put Iglesias on notice that he had been
fired.  Iglesias did not file administrative charges with the
Anti-Discrimination Division of the Puerto Rico Department of Labor
until August 28, 1990, and his initial complaint in federal court
was not filed until April 17, 1991.  Iglesias's action for
discrimination was, therefore, barred by the applicable statutes of
limitations.  See 42 U.S.C.  2000e-5(e) (establishing a 300-day
limitation period for actions under Title VII that were first
presented to an administrative agency); 29 U.S.C.  626(d)(2)
(setting a 300-day limitation period for actions under the ADEA
that were first brought before a state authority); Olmo v. Young &
Rubicam, 110 D.P.R. 740, 745 (P.R. 1981) (applying a one year
limitation period to claims brought under Law 100).  The Puerto
Rico Supreme Court's decision in Vlez Rodrguez v. Pueblo Int'l,
Inc., 94 JTS 37 (P.R. March 18, 1994) does not apply to Iglesias's
claims for the reasons stated in the district court's memorandum.
    Regarding Iglesias's contract claims, MONY's employment
contract with Iglesias did not limit MONY's ability to withdraw
products from the Puerto Rico market.  Iglesias argues that the
provision in the contract authorizing him to "solicit applications
for insurance in MONY of the types of insurance which MONY is
issuing" created a vested right that prevented MONY from ever
altering its policy offerings in Puerto Rico.  We recognize that
"when the facts support plausible but conflicting inferences on a
pivotal issue in the case, the judge may not choose between those
inferences at the summary judgment stage."  Coyne v. Taber Partners
I, 53 F.3d 454, 460 (1st Cir. 1995).  We need not indulge a
nonmoving party's inferences, however, if they do not "flow
rationally from the underlying facts."  Rubinovitz v. Rogato, 60
F.3d 906, 911 (1st Cir. 1995).
    No reasonable jury could agree with Iglesias's reading of
his contract.  The plain language of the provision purports only to
authorize Iglesias to sell MONY's product line, it does not
guarantee stability of that line.  MONY is a national company that
deals with many agents in diverse geographic areas.  To interpret
this contract provision so as to grant each of those agents the
power to control which products MONY offers within that particular
agent's jurisdiction would give Iglesias and other agents the power
to veto policy decisions made by MONY's upper management at the
company's national headquarters.  This would flip the employment
relationship between MONY and its agents on its head.  Further,
each of Iglesias's contracts contained clauses in which MONY
reserved the right to change the contract.  The district court's
grant of summary judgment was entirely appropriate.
II.  MONY's Counterclaim.
    MONY reimbursed Iglesias for expenses that he incurred as
a result of his professional activities.  To supplement his income,
Iglesias admits that he "padded" his expense reimbursement requests
from 1981 to 1988.  MONY first learned of Iglesias's practice of
overstating his expenses in 1987.  At that time, MONY took no legal
action against Iglesias.  Instead, after notifying him that his
conduct conflicted with company policy, MONY requested that he
submit accurate reports in the future.  Subsequently, Iglesias
brought the present action against MONY for discrimination and
breach of contract.  On November 7, 1991, in the course of a
deposition, Iglesias admitted that he had continued submitting
exaggerated expense reports even after MONY's 1987 warning.
    MONY tried to use the information obtained at the 1991
deposition in three ways.  First, MONY questioned Iglesias about
his expense reports during trial in an effort to impeach his
credibility.  Second, MONY attempted to raise the falsified expense
requests as an affirmative defense to Iglesias's discrimination
claims, arguing that they provided MONY with a valid non-
discriminatory reason to terminate Iglesias.  The court did not
allow MONY to pursue this strategy because MONY learned of these
improprieties only after it had terminated Iglesias.
    Third, and more importantly for our purposes, MONY sought
leave to amend its answer to add a counterclaim for restitution.  
On March 17, 1992, the magistrate judge granted MONY's request.  
For four years, the parties conducted discovery on the
counterclaim.  On August 6, 1996, Iglesias moved for dismissal of
MONY's counterclaim arguing, inter alia, that it was barred by
laches.  On August 14, 1996, the district court dismissed the
counterclaim as untimely.  MONY now appeals from that dismissal.
    Although neither of the parties has raised the issue, we
have an obligation to inquire into our subject matter jurisdiction
over MONY's counterclaim.  See Clark v. Paul Gray, Inc., 306 U.S.
583, 588 (1939) (holding that although district court's
jurisdiction had not been challenged, Court had duty to raise
question of whether jurisdictional amount was involved).  See alsoWhite v. Gittens, 121 F.3d 803, 806 (1st Cir. 1997).  Federal
courts are courts of limited jurisdiction; a court may not address
the merits until "after . . . the court has assumed jurisdiction
over the controversy."  Bell v. Hood, 327 U.S. 678, 681 (1946);
see also Steel Co. v. Citizens for a Better Environment, 118 S. Ct.
1003, 1012 (1998) (stating that deciding the merits before
confirming jurisdiction "carries the courts beyond the bounds of
authorized judicial action and thus offends fundamental principles
of separation of powers").  Since MONY's counterclaim sounds in
state law, a federal court may not hear it unless it falls within
the ambit of supplemental jurisdiction or is supported by an
independent jurisdictional basis.  See Toste Farm Corp. v. Hadbury,
Inc., 70 F.3d 640, 646 (1st Cir. 1995) (noting that a federal court
has jurisdiction over a counterclaim only if it resides within the
court's supplemental jurisdiction or is supported by an independent
jurisdictional basis).
    The parties appear to have assumed that MONY's
counterclaim was within the court's supplemental jurisdiction.  
When considering supplemental jurisdiction, the nature of the
counterclaim is crucial.  Federal Rule of Civil Procedure 13
describes two types of counterclaims: compulsory and permissive.  
A compulsory counterclaim is one that "arises out of the
transaction or occurrence that is the subject matter of the
opposing party's claim."  Fed. R. Civ. P. 13(a).  All counterclaims
that are not compulsory are permissive.  See Fed. R. Civ. P. 13(b).  
Only compulsory counterclaims can rely upon supplemental
jurisdiction; permissive counterclaims require their own
jurisdictional basis.
    The supplemental jurisdiction statute provides: "[I]n any
civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental
jurisdiction over all other claims that are so related to claims in
the action within such original jurisdiction that they form part of
the same case or controversy under Article III of the United States
Constitution."  28 U.S.C.  1367(a).  Section 1367 incorporates the
common law doctrines of pendent and ancillary jurisdiction.  
See Penobscot Indian Nation v. Key Bank, 112 F.3d 538, 563 (1st
Cir.), cert. denied, 118 S. Ct. 297 (1997).  Federal courts have
ancillary jurisdiction over compulsory counterclaims.  
See McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st
Cir. 1982); 6 Charles Alan Wright, Arthur R, Miller & Mary Kay
Kane, Federal Practice & Procedure  1414, at 99 (2d ed. 1990).  
Permissive counterclaims, however, do not fall within ancillary
jurisdiction and therefore may not be heard in federal court unless
supported by an independent basis of jurisdiction.  See McCaffrey,
672 F.2d at 248; Wright, et al.,  1422, at 169-70.
    There are at least four tests to determine whether a
counterclaim is compulsory or permissive:
    1) Are the issues of fact and law raised by
    the claim and counterclaim largely the same?

    2) Would res judicata bar a subsequent suit on
    defendant's claim absent the compulsory
    counterclaim rule?

    3) Will substantially the same evidence
    support or refute plaintiff's claim as well as
    defendant's counterclaim?

    4) Is there any logical relation between the
    claim and the counterclaim?
McCaffrey, 672 F.2d at 248 (quoting 6 Wright et al., supra,  1410,
at 42 [currently 52-57])(internal quotation marks omitted).  Of
these tests, only the fourth   the "logical relation" test   could
possibly encompass MONY's counterclaim.  In McCaffrey, we adopted
the Fifth Circuit's treatment of the logical relation test.  Under
this approach, a claim qualifies as compulsory only if:
    it arises out of the same aggregate of
    operative facts as the original claim in two
    senses: (1) that the same aggregate of
    operative facts serves as the basis of both
    claims; or (2) that the aggregate core of
    facts upon which the original claim rests
    activates additional legal rights in a party
    defendant that would otherwise remain dormant.
McCaffrey, 672 F.2d at 249 (quoting Revere Copper & Brass, Inc. v.
Aetna Cas. & Sur. Co., 426 F.2d 709, 715 (5th Cir. 1970)).
    Applying this standard, MONY's counterclaim is
permissive.  First, the aggregate of operative facts giving rise to
Iglesias's claims is entirely different from the facts supporting
MONY's counterclaim.  Iglesias alleges that MONY removed its
disability insurance product from the Puerto Rico market in 1981
for discriminatory reasons.  That change in policy, he claims, led
to his eventual termination, which therefore was also
discriminatory.  The evidence relevant to these claims includes the
terms of Iglesias's employment contract and documentary,
testimonial or other evidence concerning MONY's actions in Puerto
Rico.  By contrast, MONY's counterclaim is for restitution of
monies that Iglesias wrongfully obtained from the company over the
period from 1981 to 1988.  The facts supporting the restitution
claim include Iglesias's records and expense vouchers for travel
and meals, his admissions during deposition, and documentary,
testimonial or other evidence regarding MONY's reimbursement
policies.  Notwithstanding both claims arose during the same time
period, they therefore rest on different sets of supporting facts.
    Second, MONY's ability to recover restitution does not
depend on the success or failure of Iglesias's claims.  Iglesias
has admitted that he overbilled his expenses to enhance his
compensation.  Although MONY discovered Iglesias's false
reimbursement requests for 1988 in a deposition that was part of
the present action, Iglesias's claims did not "activate" otherwise
dormant claims.  MONY could have sought reimbursement for its
payments based on Iglesias's false expense reports prior to 1988 at
any point.  Even MONY's claim relating to 1988 expenses is not tied
to the merits of the discrimination and contract claims.  In other
words, MONY's counterclaim bears no logical relation to the claims
in the main action.
    We conclude that MONY's counterclaim is permissive rather
than compulsory, and is not supported by federal supplemental
jurisdiction.  We look, therefore, to whether it rests on an
independent federal jurisdictional basis.
    The only possible jurisdictional basis would be diversity
of citizenship.  While Iglesias and MONY are citizens of different
states, MONY did not allege that its claim exceeded any specified
sum, nor is its amount ascertainable from the record.  See 28
U.S.C.  1332(a) (1993) (limiting diversity jurisdiction to claims
that exceed a certain amount-in-controversy).  At the time that
MONY asserted its counterclaim, the amount-in-controversy required
was in excess of $50,000, exclusive of interest and costs.  The
burden of alleging jurisdiction is on the party asserting the
claim.  See Viquiera v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)
(stating that "the proponent . . . must carry the burden of
demonstrating the existence of federal jurisdiction").
    Although "the sum claimed by the [proponent] controls if
the claim is apparently made in good faith," Saint Paul Mercury
Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnote
omitted), MONY, as noted, has failed to allege that its
counterclaim exceeds the required amount-in-controversy nor is
there evidence in the record from which its value can reliably be
determined as exceeding that amount.  MONY stated merely that it
was:
    in the process of reviewing each and everyone
    [sic] of the expense reports submitted by Mr.
    Iglesias to determine what was the scope of
    this practice by Mr. Iglesias and the
    approximate amount of funds wrongfully taken
    by Mr. Iglesias from Mutual through the scheme
    of false expense reports acknowledged by the
    plaintiff.
    Later, MONY submitted a more detailed accounting of
specific instances in which Iglesias alleged excessive or false
mileage, but did not state the value of the wrongful claims.  MONY
noted that Iglesias had charged $48,500.87 in meal expenses between
1981 and 1988, but it did not indicate what portion of these claims
was false or overstated.
    In these circumstances   lacking MONY's allegation that
the counterclaim meets the jurisdictional amount, and lacking facts
of record indicative that this is so   we must conclude that the
district court was without jurisdiction to proceed.  We, therefore,
remand the counterclaim with directions that it be dismissed for
want of jurisdiction.  See Fed. R. Civ. P. 12(h)(3)("Whenever it
appears by suggestion of the parties or otherwise that the court
lacks jurisdiction of the subject matter, the court shall dismiss
the action.").  See also United Food & Com. Workers Union v.
Centermark Properties Meridien Square, Inc., 30 F.3d 298, 306 (2d
Cir. 1994) (addressing for first time on appeal whether district
court lacked subject matter jurisdiction and remanding for
determination of whether amount in controversy requirement had been
met).  
    We recognize that Iglesias never pointed out below the
absence of a proper amount-in-controversy allegation, nor was the
subject raised by anyone.  Had it been raised, MONY might have been
able to remedy the deficiency by amendment if it believed in good
faith that its counterclaim exceeded the jurisdictional minimum.  
In these circumstances, the dismissal we now order shall be without
prejudice to MONY's right, if it can do so in good faith, to amend
the counterclaim within such time as the district court allows so
as to allege a supportably proper jurisdictional amount.  If MONY
can do so, the district court may lift the jurisdictional bar.  Cf.United Food, 30 F.3d at 306.  If that occurs, the court will be
faced with whether to reinstate its previous dismissal with
prejudice for untimeliness.  We comment briefly.
    Because jurisdiction over the counterclaim has not been  
established, we are without authority to rule whether the district
court's dismissal for untimeliness was proper.  Cf. Steel Co., 118
S. Ct. at 1012.  The issue was, however, presented in this appeal
and we believe it would be helpful if we were to state our initial
impressions, recognizing their present non-binding character.  MONY
brought its counterclaim only four months after Iglesias's November
7, 1991 deposition revealing for the first time that he had
continued to falsify his expenses even after similar improprieties
were noted in 1987.  In all the circumstances, it is not readily
apparent why MONY should be thought tardy in bringing the
counterclaim when it did.   
    Iglesias argues that the counterclaim is barred by
laches.  The equitable doctrine of laches allows a court to dismiss
a claim "where a party's delay in bringing suit was (1)
unreasonable, and (2) resulted in prejudice to the opposing party."  
K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir.
1989).   Even if we were to find unreasonable delay within the
period between 1987, when MONY first learned that Iglesias had been
padding expenses, and 1992, when, after having warned Iglesias
earlier, MONY asserted its counterclaim based on the subsequent
defalcations, we fail to see how any of that delay prejudiced
Iglesias.  Indeed, such prejudice as there was appears to have
worked the other way.  The magistrate judge had granted permission
to MONY to assert its counterclaim, and the parties thereafter
conducted four years of discovery.  MONY sifted through receipts
for meals and business trips in an effort to reveal false claims.  
The court's dismissal after four years of discovery had been
allowed seems to work a hardship on MONY.  Given these equities, we
would have serious questions as to the strength of Iglesias's
laches argument.   
    The judgment for MONY against Iglesias is affirmed.  The
order dismissing the counterclaim for untimeliness is vacated and
the counterclaim remanded with directions to dismiss the
counterclaim without prejudice for want of jurisdiction.   
    

</body>

</html>