CHERYL LAMARE & others[1] *vs.* GEORGE BASBANES.[2]

Middlesex. May 5, 1994. - July 12, 1994.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Negligence*, Attorney at law, Standard of care. *Attorney at Law*, Negligence, Attorney-client relationship.

An attorney representing the husband in a divorce action and a care and protection proceeding owed no duty of care to the wife or his children inasmuch as the parties were in adversary relationships and their interests, in the context of the proceedings, were in conflict; consequently there could be no liability of the attorney to his client's wife or children for his alleged negligence in suggesting an allegedly incompetent supervisor for the husband's visits with his children (who were in the legal custody of the Department of Social Services), as an alleged result of which the husband was able to kidnap the children and remove them to another country. [276-278]

CIVIL ACTION commenced in the Superior Court Department on September 30, 1992.

The case was heard by *George A. O'Toole, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Dallas W. Haines, III*, for the plaintiffs.

*Warren D. Hutchison* (*Harris K. Weiner* with him) for the defendant.

LYNCH, J. The plaintiffs appeal from summary judgment entered in favor of the defendant attorney pursuant to Mass.

---

[1]Lamare brought this action individually and on behalf of her two minor children, Ellas Voulgarelis and Demetra Voulgarelis.

[2]The complaint also named the Department of Social Services, the Department of State Police, the town of Tyngsborough, and the town of Chelmsford. The complaint was dismissed as to Frances Goldfield and Stanley Voulgarelis.

R. Civ. P. 56, 365 Mass. 824 (1974), after a Superior Court judge concluded that the defendant did not owe a legal duty to the plaintiffs. We transferred this case from the Appeals Court on our own motion.

The defendant is the attorney for Stanley Voulgarelis, Lamare's ex-husband and the father of the two minor plaintiffs. The relevant facts, taken from the complaint and affidavit of the defendant, are uncontested.

Voulgarelis filed for divorce from Lamare after she became suspicious that he was sexually abusing their two children. Care and protection proceedings were initiated on behalf of the children, and Frances Goldfield of the Department of Social Services (department) was appointed guardian ad litem to represent the children's interests. The department was granted legal custody of the children while physical custody remained with Lamare. During both the care and protection proceedings and the concurrent divorce action, the defendant represented Voulgarelis. A final divorce decree was entered in May of 1989. In September, 1989, Janice Bassil was appointed separate counsel to represent the children relative to the sexual abuse charges.

Initially, Voulgarelis was permitted supervised visits with his children that were to take place at a department facility. After the divorce judgment, the defendant petitioned the court to allow an unsupervised visit for an entire weekend. The department agreed to allow Voulgarelis to visit his children away from a department facility, provided a supervisor was present. The defendant recommended that Delia Almeida be the supervisor, and she was approved by the department.

On October 29, 1989, Almeida picked the two children up at Lamare's home in a taxi and met Voulgarelis at a parking lot. Almeida and the two children entered Voulgarelis's car. Voulgarelis drove to a remote section of the highway and forced Almeida from the car. He then drove to New York and boarded a plane for Greece with the two children. One child has since been recovered. The other child's exact whereabouts remain unknown.

The plaintiffs allege that the defendant's negligence enabled the abduction to take place because the supervisor recommended by the defendant was incompetent. The plaintiffs further allege that they relied on the defendant's recommendation of Álmeida, and that the defendant knew or should have known that Voulgarelis would abduct the children. Given these particular factual circumstances, the plaintiffs contend that the defendant owed them a duty of care, and thus summary judgment was inappropriately granted in favor of the defendant.

It is undisputed there was no attorney-client relationship between the defendant and plaintiffs. Absent an attorney-client relationship, the court will recognize a duty of reasonable care if an attorney knows or has reason to know a nonclient is relying on the services rendered. See *Spinner v. Nutt*, 417 Mass. 549, 552 (1994); *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989). However, the court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client. See *Spinner* v. *Nutt, supra* at 552; *Logotheti* v. *Gordon*, 414 Mass. 308, 312 (1993). See *DaRoza* v. *Arter*, 416 Mass. 377, 383-384 (1993). To impose a duty of care where there is the potential for conflicting interests would be inconsistent with S.J.C. Rule 3:07, Canon 4, DR 4-101, as appearing in 382 Mass. 778 (1981).

The rule is founded on the realization that, if a duty was owed to the adversary of an attorney's client, an unacceptable conflict of interest would be created, and because it would be inimical to the adversary system for an adverse party to be allowed to rely on an opposing party's attorney. *Beecy* v. *Pucciarelli*, 387 Mass. 589, 597 (1982). It is well established that attorneys owe no duty to their client's adversary. See *Page* v. *Frazier*, 388 Mass. 55, 63 (1983). Within the adversary system, "there is no room for existence of a duty running to the adversary." *Allied Fin. Servs., Inc.* v. *Easley*, 676 F.2d 422, 423 (10th Cir. 1982), citing *Tappen* v. *Ager*, 599 F.2d 376, 378 (10th Cir. 1979).

The plaintiff Lamare admits that she was adverse to the defendant's client. Therefore, the defendant owed her no duty of care. The plaintiffs also argue that the defendant was at no time in an adversary role with respect to the two minor children, and that there was no independent and potentially conflicting interest between the defendant and the two children.[3] However, the Legislature has recognized that, at times, parents' interests and their children's interests may conflict. See G. L. c. 119, § 29 (1992 ed.) (requiring separate counsel for parents and children in certain care and custody proceedings). In this case, at all relevant times the defendant represented the children's father. The children were represented by their guardian ad litem during the care and protection proceedings. Moreover, separate counsel had been appointed to represent the children with regard to the allegations of sexual abuse. It is clear from the allegations of sexual abuse alone that a potential conflict existed. Furthermore Voulgarelis sought different visitation rights from those recommended by the guardian ad litem, thus putting the defendant at further odds with the children. Accordingly, the defendant owed no duty to the children.

Finally, the plaintiffs urge that the defendant owed the children a duty of reasonable care because public policy demands it. In support of this argument, the plaintiffs point to G. L. c. 119, § 1 (1992 ed.), which states that the policy of the Commonwealth shall be to "insure the rights of any child to sound health and normal physical, mental, spiritual, and moral development." The plaintiffs argue that the defendant is not free to ignore the Commonwealth's mandate, and thus had a duty to the children in order to achieve the policy goals of the Commonwealth. However, there is no evidence that the Legislature intended G. L. c. 119, § 1, to impose such a duty on an attorney representing a parent when the parent's interest may conflict with the child's interest. In these cir-

---

[3]The defendant does not argue that the plaintiff Lamare lacks standing to raise claims in behalf of the children, and therefore we assume, without deciding, that such standing exists.

cumstances, we will not infer such a duty. See *Bratcher* v. *Galusha*, 417 Mass. 28, 31 (1994); *Schultz* v. *Grogean*, 406 Mass. 364, 368 (1990).

*Judgment affirmed.*