Murphy, J.
The plaintiff, Auburn Medical Investors, Limited Partnership d/b/a Life Care Center of Auburn (“LCC”), brought this action against the defendants: Lillian Audette (“Audette”), individually, for breach of contract and quantum meruit (Counts I and II);[2] William F. Scannell, Jr. (“Scannell”), as Attorney for Audette, for breach of contract and negligence (Counts III and IV); and Roland DuBrule (“DuBrule”), son of Audette, as the transferee of allegedly fraudulently conveyed property (Count V).
Scannell and DuBrule now move to dismiss LCC’s complaint under G.L.c. 231, §59H, asserting that the actions complained of occurred during the exercise of defendants’ right to petition under either or both of the Constitutions of the United States or the Commonwealth of Massachusetts.
Scannell further argues that LCC’s claims are barred because, as an attorney, he is immune from liability to his adversary for actions taken in furtherance of the representation of his clients. DuBrule argues that LCC’s claims that Audette fraudulently conveyed property to DuBrule are without merit because at the time of the conveyance defendants had no intent to defraud LCC. LCC responds that Scannell and DuBrule’s actions do not fall under the protections of Section 59H because the claims are not based on defendants’ exercise of Audette’s right to petition. For the reasons detailed below, defendants’ Motion to Dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
This case involves a dispute between LCC and the defendants over payments due to LCC for nursing home services rendered to Audette. Audette signed an Admission Agreement in which she agreed to pay for nursing home care at LCC of Auburn. She was admitted for long term rehabilitation to LCC on May 5, 2000, with private health insurance coverage which paid for her care through May 26, 2000. On May 27, 2000, she became a private pay patient.
Audette filed an application for Medicaid benefits on or about August 1, 2000. LCC retained Medi Services, Inc. to assist Audette in the filing and processing of the application. That application was denied on October 2, 2000. On October 4, 2000, LCC made demand for payment from Audette in the sum of $34,318.07. On November 6, 2000, LCC advised Audette that LCC intended to discharge her for nonpayment.
Audette retained the services of an attorney, Scannell, to represent her with regard to various concerns and controversies involving LCC and to help *707 her in her quest to obtain Medicaid benefits. On February 27, 2001, having received no payment from Audette or on her behalf since her insurance expired on May 26,2000, LCC issued her a notice of discharge. In April 2001, a second Medicaid application was completed by LCC, with assistance from Scannell. That application was denied on June 8, 2001, because Audette’s assets exceeded the program limits by a sum slightly in excess of $3000.
On July 10, 2001, LCC issued a second notice of discharge for nonpayment. On July 12, 2001, Audette, through Scannell, appealed the second notice to discharge to the Division of Medical Assistance for an administrative hearing. Pursuant to applicable Regulations of the Division, the appeal effectively prevented LCC from discharging Audette until after a hearing could be held.
Following the hearing, the hearing officer provided Scannell with information and steps to appeal the denial of the second Medicaid application. The Court assumes, arguendo, that if Scanell had diligently pursued these steps, the result would have been that Audette would have qualified for Medicaid benefits retroactively as of January 1, 2001. On October 2, 2001, at the continued hearing, Scannell failed to file an appeal of the denial of the second Medicaid application, as instructed by the hearing officer. In addition he failed to present evidence showing that Audette’s son, DuBrule, had filed such an appeal.
Although Audette lost her administrative appeal, Scannell effectively prevented LCC from discharging Audette until Audette was able to obtain Medicaid benefits on her third attempt, which provided Medicaid benefits retroactive to August 1, 2001. Scannell’s “negligent” filing of the application resulted in seven months of private pay which otherwise would have been covered by Medicaid payments. As of March 31, 2002, Audette, still a resident of LCC, had an outstanding balance of $128,073.57. LCC filed the instant Complaint against defendants on February 21, 2002, for nonpayment.
DISCUSSION
Scannell and DuBrule have joined forces to move to dismiss the Complaint under G.L.c. 231, §59H. They assert that the actions complained of occurred solely during the exercise of Audette’s right to petition for an appeal to the Division of Medical Assistance. LCC contends their claims against Scannell and DuBrule are not based, in whole or in part, on the right of Audette to petition.
A. General Laws c. 231, §59H
Commonly known as the anti-SLAPP (“strategic litigation against public participation”) statute, G.L.c. 231, §59H was enacted to frustrate lawsuits that appeared to be designed to chill citizens’ lawful exercise of their right to petition the government for redress of grievances. See generally Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). The statute seeks to prevent meritless suits brought and funded by large private interest groups to deter less affluent common citizens from exercising their political or legal rights, or to punish them for doing so. Id. Specifically, Section 59H protects citizens by enabling them to bring a “special motion to dismiss” if a civil claim against them is based on an exercise of a constitutional “right to petition.” G.L.c. 231, §59H. In enacting the anti-SLAPP statute, the legislature intended to enact very broad protection for petitioning activity. Id.
Before the Court may properly consider the merits of defendants’ Special Motion, we must first address plaintiffs contention that defendants’ Special Motion must be dismissed because it was filed more than sixty days since service of the Complaint on the defendants. A special motion to dismiss brought pursuant to G.L.c. 231, §59H, may be filed within sixty days of the service of the complaint or, in the court’s discretion, at any later time upon terms it deems proper.
Here, the complaint was served on all defendants on February 21, 2002, by the Worcester County Deputy Sheriff. Although the Special Motion was not filed with the Court until April 25, 2002, the defendants submit that said Motion was served on plaintiffs counsel on April 10, 2002, and that plaintiffs opposition to said Motion was received back in the time prescribed under Superior Court Rule 9A (10 days).
Examining the relevant statutory time periods, the Court feels compelled to count service from the day of service on opposing counsel — effectively adding 10 days pursuant to Rule 9A. This aggregation provides for a timely filing under the statute. Counsel must not suffer unduly for compliance with a procedural rule, and in this instance, the sanction of Dismissal for Rule 9A compliance would be draconian, and simply wrong. Plaintiffs request to dismiss the Special Motion on this basis is denied.
1. LCC v. Scannell (Counts III and IV)
Pursuant to G.L.c. 231, §59H, Scannell must make a threshold showing through the pleadings and affidavits that the asserted claims against him are “based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Id. at 167-68. Here, the defendants made an adequate initial showing that the claims against them were based solely on their appeal to the Division of Medical Assistance, a lawful petitioning activity. After this threshold showing, the burden shifted to LCC to: (1) establish that Scannell’s exercise of his right to petition was devoid of any reasonable factual support or any arguable basis in law; and that (2) Scannell’s actions caused them actual injury. See Duracraft, supra at 168. LCC has failed to make the requisite showing as to the first prong.
*708 The defendants’ action in filing the appeal was not an anti-SLAPP situation; it was lawful petition activity. The fact that the decision was resolved in LCC’s favor (Audette “lost” her appeal) does not mean that there was no colorable basis for her appeal. See Home Sav. Bank of America, FSB v. Camillo, 45 Mass.App.Ct. 910, 912 (1998) (although party “may turn out to be wrong in the end,” her position is not therefore ipso facto frivolous). Throughout the two hearings before the Division of Medical Assistance, the defendants pursued an administrative remedy that was legitimate in cases of this sort.
As we have observed, once the defendants support their legitimate petitioning activity, it becomes the task of the plaintiff to make the requisite showing of “no reasonable factual basis.” Here, LCC failed to do so, therefore, Counts III and IV, against Scannell, are dismissed.
LCC, in opposition, contends that Scannell’s actions do not fall under the protections of Section 59H because the claims are not based on defendant’s exercise of his right to petition. LCC contends that as a third-party beneficiary, it may reach- Scannell for Audette’s outstanding balance based on two theories: (1) breach of contract, for Scannell’s breach of the attorney-client relationship with Audette; and (2) negligence, for Scannell’s negligent assistance in completing Audette’s Medicaid Application. The Court finds both of LCC’s claims without legal merit. Scannell, as Audette’s attorney, owed no legal duty of care to LCC. There was admittedly no attorney-client relationship between LCC and Scannell. Absent an attorney-client relationship, the court will recognize a duty of reasonable care to a third party only if an attorney knows or has reason to know a non-client is relying on the services rendered. See Spinner v. Nutt, 417 Mass. 549, 552 (1994). Further, a court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owed his or her client. Lamare v. Basbanes, 418 Mass. 274, 276(1994). “To impose a duty of care where there is the potential for conflicting interests would be inconsistent with S.J.C. Rule 3:07, Canon 4, DR 4-101, as appearing in 382 Mass. 778 (1981).’’ Id. The rule is founded on the realization that, if a duty was owed an adversary of an attorney’s client, an unacceptable conflict of interest would be created. Id. Notwithstanding Scanell’s allegedly cavalier representation of Audette,[3] and his failure to undertake corrective measures suggested by the Hearing Officer, it is well established that attorneys owe no duty to their client’s adversary. See id. There is nothing on the facts of this case which would alter the reasoning in Lamare, and this court declines to place a duty of care where the Supreme Judicial Court has likewise declined.
“Within the adversary system, ‘there is no room for existence of a duty running to the adversary.’ ” Id., at 276, citing Allied Fin. Servs., Inc. v. Easley, 676 F.2d 422, 423 (10th Cir. 1982).
2. LCC v. DuBrule (Count V)
On the record of this case, there are genuine and material factual disputes as to whether or not pension funds were transferred from Audette to DuBrule with fraudulent intent, whether or not DuBrule has improperly failed to transfer such funds to LCC, and whether or not DuBrule fraudulently received ownership of Audette’s home at 22 Gates Ct. Auburn, Massachusetts for little or no consideration. Therefore, defendants’ motion to dismiss Count V against DuB-rule is denied. The plaintiffs have a right to pursue these matters to a trier of fact.
ORDER
It is hereby ordered that the defendant Scannell’s special motion to dismiss under G.L.c. 231, §59H, Counts III and IV, is ALLOWED and DuBrule’s special motion to dismiss Count V is DENIED.

 Counts I and II are not the subject of defendants’ Special Motion to Dismiss.

 See Exhibit A of Plaintiffs Opposition to Defendant Scannell and DuBrule’s Special Motion. Exhibit A contains findings of Hearing Officer Lewin, from the appeal decision, indicating Scannell’s negligence in the filing of Audette’s Medicaid Application.