Connolly, J.
The plaintiffs, National Bank of Canada, LaSalle Bank, N.A., Key Corporate Capital, Inc., and First Union National Bank (collectively, “Banks”) brought this action against the defendant, Hale & Dorr, LLP (“Defendant”) alleging claims of negligent misrepresentation (Count I), negligence (Count II), misrepresentation (Count III), breach of contract (Count IV), and violation of G.L.c. 93A, §11. These claims are based on an opinion letter that the Defendant rendered pursuant to a credit agreement between its client, Whistler Corporation of Massachusetts (“Whistler”) and the Banks. The Banks are seeking damages of $12,946,506.04 plus interest accruing after June 5, 2001. This case is before the court on the Defendant’s summary judgment motion as to Counts I, II, III, IV, and V, and the Banks’ cross motion for summary judgment motion as to Counts I, II, III, and IV. For the following reasons, the Defendant’s motion is ALLOWED in part and DENIED in part, and the Banks’ cross motion is DENIED in full.
FACTS
I. UNDISPUTED FACTS
On or about November 7, 1996, the National Bank of Canada issued a Draft Commitment Letter to Whistler that set forth terms and conditions pursuant to which the National Bank of Canada would provide Whistler with a Revolving Credit Facility and Term Loan Facility. At the time of the Draft Commitment Letter, Whistler was a manufacturer and seller of, among other products, radar detectors. The Draft Commitment Letter[2] had a term sheet annexed to it which contained conditions, one of which was that Whistler confirm that “no material, pending or threatened litigation or proceeding [existed] in court or any administrative forum.”
On February 14, 1997, the Banks executed a Revolving Credit and Term Loan Agreement (“Credit Agreement”) with Whistler under which the Banks agreed to provide Whistler with a loan in the aggregate of $55,000,000.[3] Attorneys from the Defendant represented Whistler with respect to the Credit Agreement. Within this Credit Agreement, Whistler provided representations and warranties to the Banks, including the representation that
There are no actions, suits, proceedings or investigations of any kind pending or, to the knowledge of [Whistler], threatened against [Whistler] or any of its Subsidiaries before any court, tribunal or administrative agency or board that, if adversely determined, might, either in any case or in the aggregate, materially adversely affect the properties, assets, financial condition or business of [Whistler] or materially impair the right of [Whistler] and its subsidiaries to cany on business substantially as now conducted by it. . .
As of the date of that representation and warranty, Whistler was a defendant in Cincinnati Microwave v. Whistler Corp of Mass., Case No. 96-CV-647 (“CMI Litigation”), a civil action which had been pending in to United States District Court for the Southern District of Ohio since June 1996.[4] Attorneys David B. Bassett, Donald R. Steinberg, and William F. Lee (“CMI Litigation Attorneys”), all of whom were partners for the Defendant, applied for admission and were admitted pro hac vice to serve as Whistler’s counsel for the CMI Litigation in September 1996.[5] The CMI Litigation Attorneys were not the same Defendant attorneys who represented Whistler with respect to the Credit Agreement.
*682 The Credit Agreement provided that an opinion letter from Whistler’s counsel was a condition precedent to making the loan. Specifically, paragraph 10.19 of the Credit Agreement stated, “[e]ach of the [Banks] shall have received a favorable opinion addressed to the [Banks] and dated as of the Closing Date, in form and substance satisfactory to the [Banks] from [the Defendant].” The Defendant provided the Banks with an opinion letter (“Opinion Letter”), dated February 14, 1997, drafts of which both sides had reviewed and modified[6] before that date.[7] The Opinion Letter contained a paragraph that stated,
To our knowledge, there is no action, suit, proceeding or investigation pending or threatened against [Whistler] before any court or governmental department, which could prevent the consummation of the transactions contemplated by the Credit Documents or purports by its terms to challenge the validity or enforceability of the Credit Documents or any action taken or to be taken in connection with the transactions contemplated thereby, or which, if adversely determined, could have a material adverse effect on the business, condition, affairs or operations of [Whistler] or any material impairment of the right or ability of [Whistler] to carry on its operations as now conducted.
“For the purposes expressed” in the Opinion Letter, the Defendant examined twenty-seven items set forth in a list in the Opinion Letter. Among those items were “such . . . documents, instruments and certificates ... as [the Defendant] . . . considered necessary for purposes of this opinion.”
The Opinion Letter did not mention the CMI Litigation. The Defendant attorneys who represented Whistler with respect to the Credit Agreement did not ask the CMI Litigation Attorneys about the CMI Litigation before signing the Opinion Letter. The Banks did not find out about the CMI Litigation until May or June 1999.
The Banks entered into a Forbearance Agreement with Whistler under which the Banks agreed to forbear from exercising their remedies under the Credit Agreement. On March 6, 1998, Whistler’s equity investors provided a $7,000,000 Letter of Credit drawn on Mellon Bank; this Letter of Credit provided the Banks with additional collateral for their loans to Whistler. The Banks could draw on this $7,000,000 Letter of Credit. The Banks then extended the Forbearance Agreement until May 1999.[8] On or about May 17, 1999, the Banks drew down the entire $7,000,000 Letter of Credit.
Whistler filed a Chapter 11 Petition on or about May 27, 1999. As part of those bankruptcy proceedings, the Bankruptcy Court supervised the auction sale of Whistler’s remaining assets. Escort, Inc.,[9] the owner of the patent at issue as well as a plaintiff in the CMI Litigation, and George W. Fels, the liquidating Trustee of the plaintiff in the CMI Litigation, took steps to make prospective purchasers aware of the CMI Litigation and of the fact that a purchaser of the radar division would be liable for Whistler’s past infringement of the patent at issue.[10]
II. DISPUTED FACTS
With respect to the Defendant’s opinion regarding litigation set forth in the Opinion Letter, the Banks allege that the Defendant never engaged in any evaluation of potential outcomes, never analyzed the range of potential losses, never considered the financial impact on Whistler if the CMI Litigation were unsuccessful, and never made any judgments about the prospects of winning or losing the litigation. The Defendant asserts, however, that in connection with its legal representation of Whistler, the Defendant engaged in services that included evaluating potential outcomes, analyzing potential losses, forming judgments about the prospects of winning or losing the CMI Litigation, and considering the financial impact on Whistler if it did not prevail in the CMI Litigation. Further, the CMI Litigation Attorneys did make such evaluations and verifications both before and after the Banks’ lawsuit, and the Defendant conducted due diligence for the purposes of paragraph 7 of the Opinion Letter.
The Banks allege that if Whistler lost the CMI Litigation, it would have had a material adverse effect on Whistler. The Defendant disputes this allegation; if the plaintiff in the CMI Litigation had won, there would not have been a permanent injunction or a $230,000,000 judgment. Therefore, the Defendant did not err in excluding the CMI Litigation from the Opinion Letter because the CMI Litigation could not have had a material adverse effect on Whistler. The Defendant’s expert, Attorney Lee Bromberg (“Attorney Bromberg”) stated in his affidavit that the Civil Litigation would not have had a material adverse effect on Whistler. Conversely, the Banks’ expert, Richard Clarke (“Clarke”) stated that the Banks would not have lent the money to Whistler if they had known about the CMI Litigation. Interrogatory responses that both the Defendant and the Banks included as part of their motions serve as further support for these allegations. There is therefore a genuine issue of material fact as to the effect of the CMI Litigation.
The Banks claim that Attorney C. Hall Swaim, a partner at Defendant, confirmed that the CMI Litigation chilled the sale of Whistler’s radar division and reduced the interest and bids as to certain companies. The Defendant denies that there is any admissible evidence supporting this contention.
The parties also contest the amount of damages the Banks are entitled to if they prevail. The Banks are seeking damages from the Defendant in the amount of $12,946,506.04, plus interest accruing as of June 5, 2001. The Banks allege that this amount represents the principal, interest, and fees owed to the Banks under all written agreements with Whistler; this *683 amount also includes a $7,000,000 balance on the revolving loan. The Defendant alleges that this amount does not consist of unpaid fees and balances owed because $1,620,000 was the deficiency Whistler owed the Banks under the loan. Moreover, the Defendant argues that the $7,000,000 that the Banks drew down from the Letter of Credit is not available as damages because the Banks received the $7,000,000 when they drew it down; thereby partially reducing their outstanding exposures on the loan to Whistler. The Banks assert that Whistler’s obligation to the Banks under the Credit Agreement was not reduced or modified by the $7,000,000 Letter of Credit. That dispute notwithstanding, the Banks further argue that the relevant inquiry is whether the damages are owed and in what amount.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). As the moving party has this burden, the court considers the evidence presented in the light most favorable to the non-moving party. Mass.R.Civ.P. 56(c); Augat, Inc. v. Liberty Mut Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Flynn v. City of Boston, 59 Mass.App.Ct 490, 491 (2003).
The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989) “[B]are assertions and conclusions . .. are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993).
I. COUNT INEGLIGENT MISREPRESENTATION
In Count I of their complaint, the Banks allege that the Defendant engaged in negligent misrepresentation with respect to the statements it made in the Opinion Letter regarding pending litigation. “A claim for negligent misrepresentation is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion.” Nota Constr. Corp. v. Keyes Assoc., Inc., 45 Mass.App.Ct. 15, 20 (1998); see Restatement (Second) of Torts §552(1), cmt. e (1977). Massachusetts has adopted the negligent misrepresentation standard set forth in the Restatement (Second) of Torts. DeLuca v. Jordan, 57 Mass.App.Ct. 126, 136 (2003).
Section 552(1) of the Restatement (Second) of Torts provides that
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for the pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care of competence in obtaining or communicating the information.
See DeLuca, 57 Mass.App.Ct. at 136-37; Nota Constr. Corp., 45 Mass.App.Ct. at 20 (noting that “Supreme Judicial Court has held that liability will be imposed in Massachusetts for the negligent furnishing of services to one not a party to the contract where the defendant knows that the party will rely on his services”). This “rule of liability ... is based upon negligence, [therefore] the defendant is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information.” Restatement (Second) of Torts §552(1), cmt. e.
The standard set forth in §552 “has . . . been applied to an attorney’s liability for negligent misrepresentation to a third-party nonclient.” DeLuca, 57 Mass.App.Ct. at 137; see Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989); Kirkland Constr. Co. v. James, 39 Mass.App.Ct. 559, 561-63 (1995). For there to be liability, the plaintiff must first establish that the Defendant owed it a duty. See id. “[T]he court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client.” Lamare v. Basbanes, 418 Mass. 274, 276 (1994);[11] DeLuca, 57 Mass.App.Ct. at 137-38; McCarthy v. Landry, 42 Mass.App.Ct. 488, 490 (1997). “It is the potential for conflict that is determinative, not the existence of an actual conflict.” Miller v. Mooney, 431 Mass. 57, 63 (2000) (emphasis added). The court will more readily find an independent duty, however, “where .. . the service is intended to benefit the client as well as the third party.” Kirkland Constr. Co., 39 Mass.App.Ct. at 562, citing Logotheti v. Gordon, 414 Mass. 308, 311 (1993).
In Kirkland Constr. Co., the plaintiff brought an action for negligent misrepresentation, negligent supervision, and violation of G.L.c. 93A against the defendants after the defendants’ client failed to pay the plaintiff for the services it rendered. 39 Mass.App.Ct. at 559-60. The defendants were attorneys who had provided the plaintiff with assurances, in the form of *684 a letter, that its client would be able to pay the plaintiff for its services. Id. at 559. The plaintiff “agree[d] that it knew that [the defendants] represented [their client] and that they could not represent [the plaintiff] in any manner adverse to [their client] . . . [The plaintiff] argue[d], instead, that its claim [wa]s derived from a related, but different principle, namely, that in certain circumstances a lawyer owes a duty of due care to a nonclient who he or she knows will rely on the services rendered.” Id. at 561.
The plaintiff alleged that it had sought assuring information from the defendants, not legal advice; that the defendants had made factual representations about their clients’ arrangements for paying the plaintiff; that the defendants’ objective was to induce the plaintiff “to enter into a contract for the benefit of its client, [the defendants themselves], and, incidentally, [the plaintiff;]” that the defendants knew and intended that the plaintiff rely on their assurances; and that the defendants’ representations were false." Id. at 562-63. “Those allegations, if they are proven, are the stuff of liability." Id. at 563. Kirkland Constr. Co., however, was before the court on a motion to dismiss under Mass.R.Civ.P. 12(b)(6), thereby limiting the court to considering the complaint only in determining whether the plaintiff had stated a claim upon which relief could be granted. Id. at 560.
The lower court, in allowing the defendants’ motion to dismiss, held that “[n]o obligation to a nonclient... arises from such action [i.e., transmitting its client’s position] other than the duty to refrain from relaying information that the lawyer knows or should know is untrue or misleading.” Id. at 563 (alterations in original) (ellipses added). The court reversed the lower court’s judgment because, in its complaint, the plaintiff alleged that the defendants had provided the plaintiff with information they knew or should have known was false. Id. The court, however, did not address the issue of whether there was a conflict of interest between the defendants’ client and the plaintiff. See id. at 564. Rather, the court held that based on the allegations set forth in its complaint, it could not “now be said that no set of provable facts would entitle [the plaintiff] to relief.” Id.
In McCormack v. Galego, however, this court (Gershengorn, J.) found that a conflicting relationship existed between the defendant law firm and the plaintiff thereby preventing the plaintiff from establishing a prima facie case of negligence. Civil Action No. 950837 *4 (Mass.Super.Ct. March 4, 1996) (Gershengorn, J.) (5 Mass. L. Rptr. 157). In that case, the plaintiff engaged in a loan and second mortgage transaction with a bank whom the defendant represented. Id. at *2. At the closing of this transaction, the defendant provided the bank with a Certificate of Title that the defendant had rendered; the defendant gave the plaintiff a copy of this document. Id. The plaintiff later learned that the information contained on the Certificate of Title was vague and inadequate, and that the plaintiff owned less land than the Certificate of Title indicated. Id.
The court noted that it is “well settled that an attorney has no duty to a nonclient where the non-client has potentially conflicting interests with that of the attorney’s client.” Id. at *4 citing Lamare, 418 Mass, at 276, Logotheti, 414 Mass, at 312, Robertson, 404 Mass, at 524, Page v. Frazier, 388 Mass. 55, 65 (1983). A conflicting relationship existed in McCormack because the defendant’s client, the bank, “had an interest in extending a loan to [pjlaintiff and in securing the repayment of that debt by [pjlaintiff. The nonclient [pjlaintiff wanted to acquire money from the [b]ank and protect her interest in the [p]roperty. These competing interests present the potential conflict in this . . . transaction.” Id.
Although the facts are distinguishable and the plaintiffs claim against the defendant is for negligence itself rather than negligent misrepresentation, the court’s analysis in McCormack serves as persuasive authority for this case, and it goes a step beyond the analysis in Kirkland Constr. Co. It is undisputed that the Defendant represented Whistler in its loan transaction with the Banks. Whistler was interested in acquiring money from the Banks and protecting its collateral; the Banks were interested in loaning money to Whistler and securing repayment of that debt. Consequently, competing interests exist, thereby negating any duty the Defendant would otherwise owe to the Banks as its non-clients with which it engaged in a business transaction. See Restatement (Second) Torts §552(1). The Banks’ claim of negligent misrepresentation therefore should be dismissed. Accordingly, the Defendant’s motion for summary judgment on Count I is ALLOWED, and the Banks’ cross motion for summary judgment on Count I is DENIED.
II. COUNT IINEGLIGENCE
The Banks allege that the Defendant was negligent in its issuance of the Opinion Letter. The Defendant argues that not only can the Banks not prove causation, but also they cannot prove the required duty or standard of care.
Before a court can impose liability for negligence, “ ‘there must first be a legal duty owed by the defendant to the plaintiff and a breach of that duty proximately resulting in the injury.’ Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy.” O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000), quoting Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995); DaRoza v. Arter, 416 Mass. 377, 381 (1993). As discussed above with respect to negligent misrepresentation, an attorney has a duty of reasonable care to non-clients “if [the] attorney knows or has reason to know a *685 nonclient is relying on the services rendered.” Lamare, 418 Mass, at 276; DaRoza, 416 Mass, at 382-83.
The court will not impose this duty of care, however, “if such an independent duty would potentially conflict with the duty the attorney owes to his or her client.” Lomare, 418 Mass, at 276. “It is well-established that attorneys owe no duty to their client’s adversary.” Id. In producing the Opinion Letter, the Defendant represented its client, Whistler, not the Banks. As a result of this representation, the Defendant’s duty was to assist its client, Whistler; Whistler’s interest was in obtaining a loan from the Banks. The Banks’ interest was to make sure that Whistler repaid the loan the Banks made to it. The Banks’ interest therefore conflicted with that of the Defendant’s client. See McCormack, Civil Action No. 950837 at *4.
As discussed above, this court (Gershengom, J.) in McCormack held that, in the context of a loan transaction, the defendant law firm had no duty to the plaintiff non-client because the plaintiffs interest with respect to the loan transaction conflicted with that of the defendant’s client. Id. Although the defendant represented the creditor rather than the debtor, as opposed to this case in which the Defendant represented the debtor, the effect is the same. In McCormack, the defendant’s client “had an interest in extending a loan to [p]laintiff and in securing the repayment of that debt by [p]laintiff. The nonclient [p]laintiff wanted to acquire money frdm the [b]ank and protect her interest in the [property. These competing interests present the potential conflict in this . . . transaction.” Id. As the Defendant had no duly, the court need not reach the other elements of the Banks’ negligence claim. The Defendant’s motion for summary judgment on Count II is therefore ALLOWED and the Banks’ cross motion on Count II is DENIED.
III. COUNT IIIMISREPRESENTATIONS
The Banks allege that by failing to disclose the existence of the CMI Litigation in the Opinion Letter, the Defendant engaged in misrepresentation. “To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiffs detriment.” Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991); see Restatement (Second) of Torts §§525, 531. Nothing “is clearer than the fact that under Massachusetts law plaintiffs need not prove that [the speaker] knew his statement to be false.” Id. at 81 (emphasis added) (alteration in original) (quotation omitted).
A. The Statement
1. Falsity
With respect to the first element, that the statement made was false, there is a genuine issue of material fact as to whether the Defendant’s failure to include the CMI Litigation in the Opinion Letter was a false statement at the time the Defendant wrote the Opinion Letter because it is disputed whether the CMI Litigation would have had a material adverse effect on Whistler. The Defendant included Attorney Bromberg’s affidavit in its opposition to the Banks’ summary judgment motion. Before preparing the affidavit, Attorney Bromberg reviewed various documents related to the CMI Litigation and related to the loan transaction between the Banks and Whistler. After reviewing these materials, Attorney Bromberg concluded that Whistler’s laches defense would have precluded recovery against it for past patent infringement. He further concluded that even if Whistler had not prevailed, the CMI Litigation would not have had a material adverse effect on Whistler’s business because Whistler had already converted to a non-infringing technology, thereby rendering ineffective any injunction that entered against it.
The Banks included Clarke’s conflicting opinion in their motion for summary judgment. In a letter[12] to the Banks’ attorney, Clarke set forth his “preliminary” opinions regarding the impact of the Defendant’s failure to disclose the existence of the CMI Litigation in the Opinion Letter. After reviewing various documents related to both the CMI Litigation and the loan transaction between the Banks and Whistler, Clarke concluded that the CMI Litigation would have materially affected Whistler had CMI prevailed and that, had the Defendant disclosed the existence of the CMI Litigation in the Opinion Letter, the Banks would have refused to close the loan transaction or, although unlikely, agreed to the loan under modified terms.
“In judging a motion for summary judgment, ‘[t]he court is not to pass on the credibility of the witnesses or on the weight of the evidence.’ ” Noble v. Goodyear Tire & Rubber Co., Inc., 34 Mass.App.Ct. 397, 403 (1993) (alteration in original), quoting Attorney General v. Brown, 400 Mass. 826, 832 (1987). “Further, the opinion of an expert is not to be dismissed as a ‘generalized assertion of opinion’ so long as it is ‘sufficiently substantial... to raise an apparent issue of fact.’ ” Id. (alteration in original), quoting Rutland v. Fife, 385 Mass. 1010, 1010 (1982). [13] Accordingly, the court cannot resolve the issue the Defendant has raised regarding Clarke’s qualification as an expert. Rather, the court concludes that the opinions by Attorney Bromberg and Clarke have raised a genuine issue of material fact such that summary judgment is not proper.
2. Materiality
The second requirement is that the statement at issue is material, a term “which has been defined as whether ‘a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question.’ ” Zimmerman, 31 Mass.App.Ct. at 78 (alteration in original), quoting Rogen v. Ilikon Corp., 361 F.2d 260, 266 (1st Cir. 1966). The Credit Agreement contained a condition requiring *686 the disclosure of whether there were any suits pending against Whistler, therefore it is reasonable to conclude that the existence of the CMI Litigation was material to the transaction.
3. Fact or Opinion
“A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment.” Zimmerman, 31 Mass.App. at 79. The parties dispute this third requirement, but the court can resolve the dispute as a matter of law. McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 576 (1995). The Banks argue that the condition in the Credit Agreement required a statement of fact concerning pending suits and that the Defendant’s corresponding representation in the Opinion Letter constituted a statement of fact. “A fact is something ‘susceptible of knowledge.’ ” Zimmerman, 31 Mass.App.Ct. at 79. The Defendant, conversely, asserts that the statement in the Opinion Letter indicating that there were no suits pending against Whistler that would have a material adverse effect on Whistler’s ability to conduct its business was an opinion. A statement is one of opinion “if it expresses only (a) the belief of the maker, without certainly, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matter of judgment.” McEneaney, 38 Mass.App.Ct. at 575, quoting Restatement (Second) of Torts §538A.
“However, a statement of opinion may be actionable where the speaker possesses superior knowledge concerning the subject matter to which the misrepresentations relate, or where the opinion is ‘reasonably interpreted by the recipient to imply that the speaker knows facts that justify the opinion.’ ” Stolzoff v. Waste Sys. Int’l, Inc., 58 Mass.App.Ct. 747, 760 (2003) (internal citation omitted), quoting Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990); §ee Zimmerman, 31 Mass.App.Ct. at 80. In paragraph 7 of the Opinion Letter, the Defendant stated that
To our knowledge, there is no action, suit, proceeding or investigation pending or threatened against [Whistler] before any court or governmental department ... which, if adversely determined, couldhave a material adverse effect on the business, condition, affairs or operations of the Borrower or any material impairment of the right or ability of [Whistler] to carry on its operations as now conducted.
(Emphasis added.) The use of the conditional in the Defendant’s statement suggests that it is “without certainty” and therefore the Defendant’s opinion. McEneaney, 38 Mass.App.Ct. at 575; see Kirkland Constr. Co., 39 Mass.App.Ct. at 563 n.7 (holding communication at issue was “not an opinion letter . . . [because] ‘no statements . . . were made regarding any legal issues’ ”).
The phrase “our knowledge,” however, included in the paragraph at issue and defined earlier in the Opinion Letter, makes this statement of opinion actionable. In the Opinion Letter, the Defendant indicated that
[a]ny reference to “our knowledge” or “knowledge” or any variation thereof shall mean the conscious awareness of the attorneys in this firm [the Defendant] who have rendered substantive attention to [Whistler] of the existence or absence of any facts which would contradict our opinions set forth below. We have not undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of [Whistler]. Without limiting the foregoing, with respect to our opinion!] in paragraph]] ... 7 below [regarding litigation], we have not conducted a search of the dockets of any court or administrative or other regulatory agency.
(Emphasis added.) Additionally, the Defendant set forth a list of twenty-seven items that the Defendant examined “[flor the purposes of the opinions expressed” in the Opinion Letter. One item on the list indicated that the Defendant examined “such . . . documents, instruments and certificates ... as [it]... considered necessary for purposes of this opinion.”
Through this definition of “our knowledge” in the Opinion Letter and the Defendant’s admission of having reviewed twenty-seven items before producing the Opinion Letter, the Defendant has represented to the Banks that “it possesses superior knowledge concerning the subject matter to which the misrepresentations relate],]” and that it made its statements with certainty. Stoltzoff, 58 Mass.App.Ct. at 760. Consequently, it is reasonable for the Banks to have concluded that the Defendant “kn[ew] facts that justif[ied] the opinion[]” regarding pending litigation. Id.; see Briggs, 407 Mass, at 396 (holding, “[a] statement that, in form, is one of opinion, in some circumstances may reasonably be interpreted by the recipient to imply that the maker of the statement knows facts that justify the opinion”). In fact, the Defendant explicitly stated in the Opinion Letter that it was aware of the existence or absence of facts which would contradict its opinions. Accordingly, the statement at issue is a statement of opinion that is actionable in a claim of misrepresentation. See Stolzoff, 58 Mass.App.Ct. at 760.
B. Reliance
To establish the reliance element, the Banks must prove cause in fact, that their “reliance is a substantial factor in determining the course of conduct that results in [their] loss, ” Reisman v. KPMG Peat Marwick, LLP, 57 Mass.App.Ct. 100, 112 (2003), quoting Restatement (Second) of Torts §546 (1977). Causation in fact “is concerned with the question of whether the misrepresentation made by the defendant has caused the plaintiffs loss at all.” Restatement (Second) of Torts §546, cmt. a.
*687 It is not, however, necessary that [the plaintiffs] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. It is not even necessary that he would not have acted or refrained from acting as he did unless he had relied on the misrepresentation ... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision. Thus, it is immaterial that [the plaintiff] is influenced by other considerations if he is also substantially-influenced by the misrepresentation in question.
Id. at cmt. b.
The Banks must also establish that the Defendant’s failure to disclose the existence of the CMI Litigation was a legal cause of the Banks’ losses. “A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.” Restatement (Second) of Torts §548A. Therefore, a claim of reliance has
two discrete elements . . . First, a plaintiff must demonstrate that she behaved in a particular manner in response to a representation of defendant, which behavior differed from the behavior she would have exhibited absent that specific representation . .. Second, a plaintiff must demonstrate that it was reasonable for her to alter her behavior in response [to] the specific representation she has proved . . .
Francis v. Sentry Ins. Co., 76 F.Sup. 68, 75 (D.Mass. 1999)
“The question whether a party’s reliance on a promise by another is reasonable is often a question of fact, but in an appropriate case can present an issue of law[,] . . . especially . . . when the parties involved are of relatively equal knowledge and sophistication.” Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383, 387 (1998). As discussed above, the Banks and the Defendant were not of equal knowledge, although they were arguably of relatively equal sophistication. As with the Banks’ negligence claim, the parties have raised a genuine issue of material fact as to whether the Banks would have altered their conduct with respect to the loan transaction had they known about the CMI Litigation. Thus, whether the Banks relied on the statement contained in the Opinion Letter regarding pending litigation is a question of fact for the juiy to determine.
Accordingly, the Defendant’s motion for summary judgment on Count III and the Banks’ cross motion for summary judgment on Count III are DENIED.
IV. COUNT IVBREACH OF CONTRACT
A. Contractual Relationship
The Banks claim that, with respect to the Opinion Letter, the Defendant agreed to exercise reasonable care and skill in ensuring that the representations in the Opinion Letter were true and accurate. The Defendant argues that the Banks were not the Defendant’s clients, therefore no contractual relationship existed between them and the Defendant.
To establish a breach of contract claim, there must be a contract. As discussed above with respect to negligent misrepresentation, the Defendant, as the attorney for Whistler, could not have simultaneously represented Whistler and the Banks with respect to the Defendant’s producing the Opinion Letter because Whistler and the Banks had conflicting interests. As there was no contractual relationship between the Banks and the Defendant, there can be no breach of contract. Accordingly, as to this theory of relief, the Defendant’s motion for summary judgment is ALLOWED and the Banks’ cross motion for summary judgment is DENIED.
B. Third-party Beneficiaries
The Defendant correctly points out that the Banks, in their cross motion for summary judgment and opposition to the Defendant’s motion for summary judgment, allege for the first time that they are third-party beneficiaries of the contract between the Defendant and its client, Whistler. Rule 8(a) of the Massachusetts Rules of Civil Procedure requires that a pleading must set forth a claim for relief. The Defendant has challenged the Banks’ ability to raise this theory for the first time at the summary judgment stage. That notwithstanding, the court will discuss this theory of relief.
“Beneficiaries may seek to enforce such contracts under the principle that ‘when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.’ ” Miller, 431 Mass, at 61-62,[14] quoting Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982). Only beneficiaries who are intended beneficiaries of a contract have a right of enforcement. Id. at 62. Massachusetts has adopted the definition set forth in the Restatement' (Second) of Contracts, specifically that,
‘[u]nless otherwise agreed between promisor and . promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.’
Id. at 62 n.4 (emphasis added), quoting Restatement (Second) of Contracts §302 (1981). The language and circumstances of the contract must indicate that the parties to the contract clearly and definitely intended *688 the beneficiaries to benefit from the promised performance. Id. at 62.
The Defendant represented Whistler in its loan transaction with the Banks as part of the Defendant’s promised performance for its client. One aspect of that performance was the Defendant’s preparation of the Opinion Letter. The Defendant intended that the Opinion Letter influence the Banks’ behavior because the Banks’ acceptance of it was a condition precedent to the Credit Agreement. Accordingly, the Banks were a third-party beneficiary of the Defendant’s contract with Whistler, specifically the Defendant’s preparation of the Opinion Letter.
Facts are still disputed, however, as to whether the CMI Litigation did have a material adverse effect on Whistler. Thus, the Defendant’s motion for summary judgment and the Banks’ cross motion for summary judgment are DENIED as to the Banks’ third-party beneficiary theory of Count IV.
V. COUNT WIOLATION OF G.L.c. 93A, § 11
The Banks allege that the Defendant’s conduct with respect to the Opinion Letter violated G.L.c. 93A, §11. Only the Defendant has moved for summary judgment on this issue. As this court has dismissed Counts I, II, and part of IV pursuant to the Defendant’s motion for summary judgment the Defendant’s motion for summary judgment on Count V is ALLOWED insofar as Count V relates to the Banks’ claims of negligent misrepresentation, negligence, and breach of contract. The Defendant’s motion for summary judgment on Count V is DENIED insofar as Count V relates to the Banks’ claims of misrepresentation and breach of contract under a third-party beneficiary theory.
ORDER
For the foregoing reasons, the Defendant’s motion for summary judgment is ALLOWED as to Count I and Count II in their entirety; the Defendant’s motion is ALLOWED, in part, as to Count IV insofar as it concerns the Banks’ breach of contract claim and as to Count V insofar as it concerns the Banks’ claims of negligent misrepresentation, negligence, and breach of contract. The Defendant’s motion for summary judgment is DENIED as to Count III in its entirety; the Defendant’s motion is DENIED, in part, as to Count IV insofar as it concerns the Banks’ third-party beneficiary theory and to Count V insofar as it concerns the Banks’ claims of misrepresentation and breach of contract under a third-party beneficiary theory. The Banks’ cross motion for summary judgment is DENIED in full.

The Defendant alleges that it has not seen a final executed copy of the Commitment Letter, so it disputes that the Commitment Letter contained those conditions. The Defendant also notes that the Credit Agreement is the operative loan document, not the Draft Commitment Letter.

The Defendant disputes that the Banks made credit available to Whistler on February 14, 997, because funds were not disbursed on that date.

In the CMI Litigation complaint, the plaintiff alleged that Whistler and Dynatech Corporation, the defendants, infringed on the plaintiffs patent “by making, using, or selling police radar warning receivers, . . . incorporating the invention of one or more claims of the plaintiffs] patent.” The plaintiff also alleged that the defendants’ acts of infringement were “willful, deliberate, and in conscious disregard of [the plaintiffs] exclusive rights to make, use, and sell police radar warning receivers . . .”

The Defendant alleges that the CMI Litigation Attorneys also appeared on behalf of Dynatech, another defendant in the CMI Litigation.

One such modification was to the meaning of the phase, “to our knowledge." The definition of this phase set forth in the final version of the Opinion Letter stated,
[a]ny reference to ‘our knowledge’ or ‘knowledge’ or any variation thereof shall mean the conscious awareness of the attorneys in this firm [the Defendant] who have rendered substantive attention to [Whistler] of the existence or absence of any facts which would contradict our opinions set forth below. We have not undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of [Whistler]. Without limiting the foregoing, with respect to our opinion[] in paragraph[] ... 7 below [regarding litigation], we have not conducted a search of the dockets of any court or administrative or other regulatory agency.

The Defendant alleges that the final Opinion Letter, dated February 14, 1997, was not delivered until April 4, 1997.

The Banks dispute the Defendant’s allegation that at this time the Banks refused to provide further funding to Whistler. Rather, the Banks claim that by this time, they had loaned Whistler the maximum amount of credit available under the loan documents.

The Docket Sheet for the CMI Litigation indicates that Escort, Inc., was added as a plaintiff on October 1, 1997, over a year after the commencement of the suit.

The Defendant claims not only that the Bankruptcy Court ordered Whistler’s radar division assets to be sold clear of any liability, but also that Dynatech indemnified Whistler for past infringement. The Defendant asserts that, as a result of these facts, it was clear to prospective purchasers that no liability attached for past infringement.

“Th[is] rule is founded on the realization that, if a duty was owed to the adversary of an attorney’s client, an unacceptable conflict of interest would be created, and because it would be inimical to the adversary system for an adverse party to be allowed to rely on an opposing party’s attorney. It is well established that attorneys owe no duty to their client’s adversary. Within the adversary system, there is no room for existence of a duty running to the adversary.” Lamare, 418 Mass, at 276 (internal citations omitted) (quotations omitted).

Clarke’s letter was incorporated by reference into an affidavit and the affiant attested to its truthfulness under the pains of perjury.

Rutland is a Rescript opinion of the Supreme Judicial Court.

In Miller, the Court “assume[d] without deciding that an attorney-client relationship may be established by proof of a third-party beneficiary contract, the purpose of which is to provide legal services for the benefit of a third party." 431 Mass, at 61 n.3.